JOHN J. HARVEY CO., INC., Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 32550.)

Court of Claims, April 20, 1955.

*Edward F. Layden* and *Homer E. Peters* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Edward L. Bookstein* of counsel), for defendant.

LAMBIASE, J. On or about December 3, 1952, claimant entered into a contract with the State of New York acting by and through the Department of Public Works " to furnish all work, labor and services and material of every kind and to do and perform each and every act and thing necessary or proper for the Resurfacing with Wrought Iron Plates the Chamber Walls of Lock 17 in the City of Little Falls, Herkimer County, New York, in accordance with the plans and specifications for said work hereto annexed and forming a part hereof, and to fully complete said improvement in accordance with the true intent and meaning of said plans and specifications ". (Exh. 5, " Memorandum of Agreement ", constituting contract M-52-2.)

One of the items under the contract designated " Item No. 30Y " is entitled " Wrought Iron Plates ". (Exh. 5, Special Specifications, pp. 30–31; Optional Proposal No. 1, p. 3-D.) Claimant bid a unit price of twenty-seven cents per lb. for this item, and payment thereunder constitutes one portion of the claim which, for the purposes of convenience, we shall herein-

after designate as claimant's first cause of action. (Claim, par. 4.) The pertinent parts of Item No. 30Y are set out in the aforesaid special specifications as follows:

"*ITEM NO. 30Y — Wrought Iron Plates*

"(a) *Work.* Under this item the contractor shall furnish and place ½″ Wrought Iron Plates and ⅜″ Wrought Iron Butt Straps of the sizes shown on the contract plans and to the lines and grades shown or as ordered by the engineer. The plates shall be continuously welded to both vertical and horizontal butt straps so as to provide a watertight covering. All welding shall conform to the requirements of the current specifications of the American Welding Society for Welded Highway and Railway Bridges.

"(b) ＊ ＊ ＊
"(c) ＊ ＊ ＊
"(d) ＊ ＊ ＊
"(e) ＊ ＊ ＊

"(f) *Measurement and Payment.* The quantity to be paid for under this item will be the number of pounds furnished and placed in accordance with the plans and specifications. The unit price bid shall include the cost of furnishing all labor, materials, equipment, welding, etc. necessary to complete the work."

In computing by weight the quantities for which payment was made under Item No. 30Y, the State of New York refused to include in its computation 15,000 pounds of welding rods which had been used to fasten the plates to the chamber walls of the lock. Claimant contends that the welding rods were materials furnished under Item No. 30Y; that they were incorporated into the job; and that payment therefor on weight basis should be allowed under this item. The State of New York, on the other hand, while not controverting the amount of welding rods furnished, contends that this part of claimant's claim should be dismissed, because the payment clause for Item No. 30Y, subdivision (f) (*supra*), provides that the unit price bid per pound of wrought-iron plates includes the cost of furnishing "all labor, materials, equipment, welding, etc. necessary to complete the work", and that, therefore, claimant was paid for these welding rods when it was paid by weight for the wrought-iron plates.

The second part of the claim which, for the purposes of convenience, we now designate and we shall hereinafter refer to as claimant's second cause of action, arises out of certain alleged

extra and additional work which claimant alleges it was required to do and which it did perform under protest and for which it received no additional compensation from the State of New York. (Claim, par. 5.) In connection therewith claimant contends that it completed all of the work called for under the contract in May, 1953, and that thereafter the work was accepted by the State of New York and a final estimate (Exh. 7a) was prepared and sent to the claimant for signature. Claimant signed this estimate and returned it to the State of New York and then waited for payment in accordance therewith. Payment under this final estimate was not made. Furthermore, while claimant was waiting for payment and in September, 1953, it was called back to the job site and was directed by the State of New York to repair certain leaks which had developed. It is this work that claimant asserts is extra and additional and which the State of New York maintains was not additional or extra work but was contract work which was required to be done to meet the specifications of Item No. 30Y which require continuous welding to provide " a watertight covering ".

The last part of the claim, which for the purposes of convenience we designate and shall refer to hereinafter as claimant's third cause of action, alleges in paragraph 6 as follows: " 6. That claimant completed said contract on or about September, 1953, and thereafter the State of New York prepared and submitted to claimant its final estimate, wherein it included all quantities of work performed and materials placed at contract unit prices, except the items erroneously or wrongfully omitted therefrom, and set forth and conceded there remained a final balance due and payable to claimant under the terms of the contract in the sum of $9,681.85, which estimate claimant signed under protest and reservation of right to file this claim. Claimant claims herein from the State of New York the sum of $9,681.85, with interest thereon in addition to all other claims herein." Said cause of action is not before us, however, for a motion having been made by claimant at the close of the trial of this claim to treat as severed said cause of action and for a partial judgment in the sum thereof, to wit: $9,681.85, concededly due claimant from the State of New York, and said motion having been duly granted after proof had been received in relation to the allegations thereof, and the parties having stipulated that so much of said cause of action as prays that interest be awarded upon said sum of $9,681.85 be held in abeyance, this court directed what amounts to a consent judgment in favor of the claimant and against the State of New York on said cause of

action in the sum of $9,681.85. The payment and receipt of said sum, however, was without prejudice to claimant's right to have its claim for interest on said sum heard and determined at the time of the determination of the remaining causes of action set up in the claim which question and remaining causes of action we pass upon herein.

It appears that on June 30, 1953, claimant, without protest, executed what it then considered to be a "Final Estimate" (Exh. 7a). It was dated May 26, 1953, and it did not include payment for the welding rods used in the resurfacing of the chamber walls of Lock 17 under Item No. 30Y. (Claimant's Exh. 7a, p. 7.) Upon the trial this was the only "Final Estimate" introduced in evidence. Sometime after the trial of the claim herein and prior to its submission to the court, by stipulation dated November 18, 1954, of counsel for the parties herein, a photostatic copy of an estimate designated "Estimate No. 6 (Final)" pertaining to contract M.52-2 herein was stipulated into evidence as part of Exhibit 7 already in evidence as though it had been offered and received in evidence at the time of the afore-mentioned trial. We, therefore, hereinafter refer to said "Estimate No. 6 (Final)" consisting of eleven pages as part of Exhibit 7.

With this second final estimate in evidence as part of Exhibit 7, "It is the claimant's contention that the certification * * * to the original final estimate (Exh. 7a) became a nullity thereafter by virtue of the course of conduct adopted by the State." (Claimant's memorandum, p. 15, par. 1.) And "the State now agrees that the first ' final estimate ' was vitiated as such by the State's subsequent conduct. (See claimant's brief, p. 15, para. 1)." (State's brief, p. 8, par. 2.) Since the attorneys for the parties are in agreement upon this submission as to the so-called "First Final Estimate", we adopt their position with reference thereto by reason thereof, and we have considered the second final estimate, that is, "Estimate No. 6 (Final)" being part of Exhibit 7 as the final estimate herein. We proceed now to dispose of the two remaining causes of action set forth in the claim filed herein.

Concededly 15,000 pounds of welding rods were furnished by claimant, and the sole question involved in claimant's first cause of action is whether the State of New York, in measuring and paying under subdivision (f) of Item No. 30Y, is required by the terms thereof as contended by claimant to pay at the unit rate specified of twenty-seven cents per lb. for that amount of welding rods in addition to the weight of the wrought-iron

plates themselves; or under the terms of the contract claimant is required to include and did include in the price bid per lb. for the wrought-iron plates the cost of the welding rods necessary to complete the work of resurfacing with wrought-iron plates the chamber walls of Lock 17 and has been paid therefor. We are unable to agree with claimant's contention, and we have concluded that under subdivisions (a) and (f) of Item No. 30Y what the State of New York is required to pay for is the weight of the wrought-iron plates themselves, and that the unit price of twenty-seven cents per lb. bid for the plates includes, among other things, " the cost of furnishing all labor, materials, equipment, welding, etc. necessary to complete the work." (Item 30Y, subd. [f].) We conclude, therefore, that claimant's first cause of action must be and hereby is dismissed. (*Rusciano & Son Corp.* v. *State of New York,* 281 App. Div. 733.)

Concededly there were leaks in the work as done by claimant following the alleged completion thereof in May, 1953. There is, however, a difference of opinion as between the parties as to what caused them. We have considered the probable causes ascribed, on behalf of claimant, for the leakage at the welded seams, viz., that it was caused by the use of the lock by boats and by the temperature changes resulting from the raising and the lowering of the water in the lock coupled with the absence of vertical expansion joints, and we find them unconvincing. The fact remains that after the leaks were repaired in the fall of 1953, the walls of Lock 17 remained watertight down to the time of the trial despite use during that period and despite temperature changes.

We have concluded that the work which, under protest, claimant performed in the fall of 1953, and completed on November 9, 1953, was in the nature of corrective work to make good that which should have been done properly under the contract. Under such circumstances, therefore, we are unable to agree with claimant's contention that it is entitled to recover therefor as additional and extra work as alleged in its second cause of action (claim, par. 5), and we have concluded that claimant's second cause of action must be dismissed, and we hereby dismiss the same. (*Rusciano & Son Corp.* v. *State of New York, supra.*)

There remains but to dispose of the question of interest on the sum of $9,681.85 heretofore awarded to claimant, without interest with the direction that the question of said interest be reserved for and be determined by this court upon the determination of the remaining causes of action set up in the claim. In that connection claimant demands interest on said sum from

February 9, 1954, the date which it alleges the State accepted the work, to October 29, 1954, the date that judgment for that amount was filed with the clerk of the Court of Claims. In our opinion it is entitled to said interest for the reasons which we discuss hereinafter.

Claimant completed on November 9, 1953, the work under the contract and also the work which it alleges was additional and extra. Exhibit No. 6 (final), page 1, and accompanying papers, by stipulation part of Exhibit 7, is dated May 25, 1954, about six and one-half months after the completion of said work, and pursuant to Exhibit 5, specifications, page 19, paragraph 1.28, constitutes acceptance under the contract. Paragraph 1.28 reads as follows: " The date on which the Chief Engineer, Department of Public Works, certifies to the final certificate will constitute the date of acceptance of the work by the State." Claimant refused to accept payment under said final estimate because it did not include as due to it from the State of New York the items which are the basis for claimant's alleged first and second causes of action.

The State of New York, and more particularly its Department of Public Works, was entitled to a reasonable period of time after the completion of the contract by claimant within which to make its inspection of claimant's completed work, to complete measurements and computations, and to submit its final estimate herein. Of course, what might be a reasonable period of time on one completed project might be too long or too short for another. Each case of this character has to be determined on its own particular facts.

The moneys due claimant could be definitely ascertained by mathematical computation, and applying the foregoing rule of reasonableness of time, the period of time taken by the State of New York for inspecting the contractor's completed work, for the completion of measurements and computations, and for the preparation and submission of the final estimate was unreasonable under the particular circumstances in this case. " It has been stated as a general rule that whenever a debtor is in default for not paying money, delivering property, or rendering services in pursuance of his contract, justice requires that he should indemnify the creditor for the wrong which has been done him; and that a just indemnity can never be less (though it may sometimes be more) than the specified amount of money or the value of the property or services at the time it should have been paid or rendered, with interest from the time of the default until

the obligation is discharged." (*Agostini* v. *State of New York,* 255 App. Div. 264, 266.)

We accept the date February 9, 1954, urged by claimant as the date from which interest is to run on said sum of $9,681.85 (claimant's conclusion of law III; claimant's brief, p. 18), and we deem the selection of said date by claimant for said purpose as a concession on claimant's part that ninety days from date of completion of the work is a reasonable period of time within which the State of New York was to make its inspection of claimant's completed work, to complete measurements and computations, and to prepare and to submit its final estimate herein for, upon this record, a date of our selection would not have allowed as much time as that. And because claimant thus limits its demand, its recovery must be likewise limited.

We, therefore, start the running of interest in this case from February 9, 1954; and we award as damages herein the sum of $279.69, being the amount of interest at 4% on the aforesaid sum of $9,681.85 from February 9, 1954, through October 29, 1954, the date that judgment for that amount was entered by the clerk of the Court of Claims (claimant's proposed conclusions of law III; *Agostini* v. *State of New York,* 255 App. Div. 264, *supra*; *Rusciano & Son Corp.* v. *State of New York,* 278 App. Div. 999), with interest on said sum of $279.69 from October 30, 1954, to the date of entry of judgment herein. (As to the item of interest from Oct. 30, 1954, to the date of entry of judgment herein, see *Rusciano & Son Corp.* v. *State of New York,* 201 Misc. 690, 706, affd. 281 App. Div. 733.)

The foregoing constitutes our written and signed decision herein. (Civ. Prac. Act, § 440.)

Let judgment be entered accordingly.