Charles Lambiase, J.
By contract dated May 7, 1954 executed by claimant corporation on May 7, 1954 and by the New York State Thruway Authority, hereinafter referred to as the “ Authority ”, by its chairman on June 2, 1954, being Contract No.— Specification No. 18642, claimant agreed “ to *258 furnish the material and perform the labor required and necessary for construction work, New York State Thruway Authority, for temporary Restaurant Facilities, as shown on the drawings or specified at ROUTE 98 INTERCHANGE (BATAVIA, N. Y.), ROUTE 21 INTERCHANGE (MANCHESTER, N. Y.) AND ROUTE 11 INTERCHANGE (E. SYRACUSE, N. Y.) in accordance with Specification No. 18642 and the following addenda No. 1 dated April 8,1954 No. 2 dated April 12, 1954 ”, and the New York State Thruway Authority agreed to pay therefor.
The construction was accepted by the Authority, and under the final estimate of the quantities of materials 'furnished and work performed prepared by it, the said Authority conceded that there was due to claimant under said contract the sum of $7,764.54, which amount it tendered to claimant. The payment was rejected by claimant on or about January 18, 1955, and the check in said amount was duly returned to the Authority for the reason that it failed to include an item of $9,760 claimed to be due and owing to claimant as is hereinafter more particularly set forth.
The claim alleges that:
“ 7. During the performance of that part of the contract pertaining to the Route 98 interchange at Batavia, New York, said New York State Thruway Authority, acting through its engineers and agents in charge, wrongfully compelled claimant, over its protest, to clear and grub the premises and to remove trees and stumps, which clearing, grubbing, and removal of trees and stumps was not provided for or contemplated by claimant’s contract, whereby claimant performed extra and additional labor and expended materials of the reasonable cost and value of Twenty-seven Thousand Six Hundred Eighty-seven Dollars ($27,687.00), no part of which was allowed or paid for, except the sum of Seventeen Thousand Nine Hundred Twenty-seven Dollars ($17,927.00) which was allowed to claimant in the amount of Seventeen Thousand Nine Hundred Twenty-seven Dollars ($17,927.00) in partial reimbursement for the extra work required to raise the site at the Batavia project to the levels indicated as existing grades on the contract drawing on the Batavia site plan.
“ 8. That claimant has not been reimbursed in full for the extra and additional labor and materials expended in the work required to raise the site at the Batavia project to the levels indicated as existing grades in the contract drawing covering the site plan at the Batavia site. That the value of the extra and additional labor and materials to raise the site at the *259 Batavia project to the levels indicated as existing grades on the contract drawing covering the site plan at the Batavia project for which claimant has not been reimbursed or compensated for is Nine Thousand Seven Hundred Sixty Dollars ($9,760.00).”
The cause of action in the sum of $7,764.54 with interest thereon from January 18, 1955 alleged in paragraph 4 of the claim is not before us, except as hereinafter mentioned, the same by order of this court (Major, J.) having been severed and having been heretofore brought on and heard before Honorable Charles T. Major aforesaid who, having heard the proofs and allegations of the parties, did on August 26, 1955 render a decision in which he awarded thereon the sum of $7,764.54, reserving by stipulation of the parties until the final determination of the balance of the claim the question of interest alleged to be due and owing on said sum. Judgment was entered pursuant to said decision and has been satisfied by payment. It is provided in said judgment, among other things, that the payment of said judgment and the acceptance of said payment by claimant is without prejudice to claimant’s right to prosecute the remainder of its claim with respect to the moneys claimed to be due it as set forth in paragraphs five through eight inclusive of the claim herein, and to claimant’s right to litigate the question of interest on the amount of the severed portion of the claim both of which questions we now pass upon.
The cause of action wherein and whereby $9,760 is claimed to be due and owing the claimant, involves the removal of approximately 700 or 800 trees, ranging in diameter from 10 to 36 inches, and of undergrowth from approximately three acres of the afore-mentioned Batavia, New York, contract site. No other contract site mentioned in the contract is involved in connection with said cause of action.
Claimant was awarded the contract in April, 1954. Claimant’s president thereafter and on or about April 26,1954 visited the Batavia, New York, contract site at which time the contract had not been signed by the parties and no work had been done by claimant thereunder at any of the contract sites. Its grade or elevation was three to four feet below what was shown as the existing grade on Drawing 101, Exhibit 4, which drawing is listed on the bottom of the outside cover on Exhibit 3 and is part of the contract papers. An area on said drawing, bearing the legend “ EXISTING DIET EOAD TO BE COVERED WITH 9" of GRAVEL ”, and purportedly 30 feet wide and 200 feet long, contained no such road. About three acres of the *260 site of which the existing dirt road area was a part was swampy, contained muck, undergrowth and trees, the last mentioned being some 700 or 800 in number and of the size herein-before set forth.
On April 28, 1954 and two days after claimant’s president had visited the Batavia, New York, contract site, claimant was directed by telephone by the Authority to and did commence work under the contract which it did at the other contract sites doing no work, however, at the Batavia, New York, contract site until June 10, 1954 as hereinafter set forth. The parties had not as yet executed the contract when claimant was thus ordered to commence work, but its bid had been accepted. Time was of the essence of the contract and, in fact, claimant was required to and was given permission to work its crews overtime. (Addendum No. 1, Exhibit 3.)
Following the visit of claimant’s president to the Batavia, New York, site, claimant was in communication with the Authority, its officers and employees, with reference to the situation and condition which he had found at said contract site. Correspondence passed between him and the Authority represented by its chairman and at times by the architect of the State of New York, following which claimant was furnished by the Bochester district engineer’s office of the Department of Public Works of the State of New York on behalf of said Authority a typewritten paper containing estimates for site preparation work at Batavia, New York, to be done by claimant as an extra and under a supplemental agreement. This paper set forth quantities and costs for muck removal and for muck replacement, and for fill and for clearing and grubbing-, and claimant was instructed to submit its proposal for the performance of said items.
Claimant on June 1, 1954 submitted its proposal for site preparation work at the Batavia, New York, contract site on the basis of the items included in the paper which had been furnished it as aforesaid; and on June 4, 1954 it was advised that the proposal, insofar as it affected removal and replacement of muck, and placement of fill was approved. It was advised, however, that the proposal was rejected insofar as it concerned the items of “ Clearing and Grubbing” in the amount of $9,760. Claimant was also then advised and directed by the Authority to proceed at once with the muck removal and replacement, and fill work at the Batavia, New York, site; and on June 10, 1954 claimant advised the State Architect that it was proceeding with the site preparation work at Batavia, New York, under protest.
*261 Claimant performed, and was paid as an extra and by supplemental contract therefor, the removal of the muck, the muck replacement, and the placement of fill at the Batavia, New York, contract site. It was necessary and essential for the performance of said work that the trees hereinbefore mentioned first be removed and taken from the site. The tree removal work took approximately two weeks to accomplish. It is conceded that the tree removal work was done, and there is no evidence contradictory of the amount claimed therefor by claimant. There is, however, denial of liability therefor by the Authority for reasons which we now discuss.
It is the contention of the Authority that the removal of the trees was a contract obligation of the claimant under its basic contract with the Authority; and that, therefore, it should not be compelled to pay therefor as an extra. It relies upon a provision of subdivision (B) of section 1-02 of the specification, page 1-2 (Exhibit 3), which reads as follows: “ (B) Where existing trees are indicated on the drawings to be removed, or where existing trees would interfere with the contract work, whether or not indicated to be removed, remove such trees in their entirety, including the stumps and major roots, and take them from the Owner’s property.”
Claimant, on the other hand, maintains that the removal of the trees is not an operation of the basic contract but is an extra required of it by the Authority as one of the steps required and necessary to bring the grade at the Batavia, New York, contract site to that shown and represented as the existing grade at that time on the site plan or drawing. (Exhibit 4, Drawing 101.) We are in agreement with claimant therein.
The intention of the parties must be found in the language used to express such intention. (Hartigan v. Casualty Co. of America, 227 N. Y. 175.) In construing the contract and contract papers before us, the same rules of construction are applicable as between individuals (Jackson v. State of New York, 210 App. Div. 115, affd. 241 N. Y. 563; People ex rel. Graves v. Sohmer, 207 N. Y. 450, motion for reargument denied 208 N. Y. 581, and cases cited therein); and since the contract was drawn by the State of New York, if the language used is capable of more than one construction, the court must resolve all doubts against the person who uses the language and most beneficially to the promisee. (Gillet v. Bank of America, 160 N. Y. 549, 555.) If the court finds as a matter of law that the contract is unambiguous, evidence of the intention and acts of the parties plays no part in the decision of the case. Plain *262 and unambiguous words and undisputed facts leave no question of construction except for the court. The conduct o'f the parties may fix a meaning to words of doubtful import. It may not change the terms of the contract. (Brainard v. New York Central R. R. Co., 242 N. Y. 125; Restatement, Contracts, § 235, subd. [e].)
It is a well-settled rule of law that the practical construction which the parties give to a contract is of great weight in determining what the agreement really is. (Stewart v. Barber, 182 Misc. 91; Woolsey v. Funke, 121 N. Y. 87; Carthage Tissue Paper Mills v. Village of Carthage, 200 N. Y. 1.) In that connection it must be noted that the basic contract does not concern merely the Batavia, New York, contract site, but deals also with the Manchester, New York, and East Syracuse, New York, contract sites. In connection with the last two enumerated sites no question which had to be litigated arose under the contract with reference to the grading and preparation of the sites, all of the necessary preparatory work at such sites having been done by others than claimant and before the latter started its contract work, denoting a construction of the contract by the parties thereto with reference to the amount of preparation work required and by whom it was to be done in keeping with claimant’s contention with reference to the Batavia, New York, contract site. To be noted also is the fact that claimant was given a supplemental agreement on the Batavia, New York, contract site which we have hereinbefore discussed; and that in order that the work provided for by the supplemental contract could be done, it was necessary to remove the afore-mentioned trees and undergrowth and unless said removal is contemplated by the provisions of the basic contract, said item, too, should have been allowed as an extra and should have been included in a supplemental agreement.
The specifications, part of the basic contract, contain the following provision: ‘ ‘ The present grade elevations shown are as they existed before the cleaning was done, and are given for the convenience of the Contractor to aid him in arriving at the quantities of excavations, grading and backfilling.” (Emphasis supplied; Exhibit 3, Specifications, page 1-1, ' ‘ EXCAVATION AND ROUGH GRADING ”, NOTE: (A) in part.) Applying the foregoing rules of construction, we are of the opinion: that the immediately above-quoted specification amounts to a representation by the Authority that the sites involved in the instant contract had, in effect, been cleared, as indeed they had been, at Manchester, New York, and at East Syracuse, New York; that Exhibit 4, Drawings 101,102 and 103 with their lack *263 of established symbols indicating trees is also a representation; and that it was represented that the trees in question had been or were to be removed by someone other than claimant in the preparation of the sites; and we conclude that claimant’s obligation to perform under its main or basic contract did not come into existence until the elevation of the grade on the contract sites, including that of the Batavia, New York, site, had been brought to the grade shown on said drawings — the Batavia, New York, contract site grade being shown on Exhibit 4, Drawing 101 — as the existing grade or elevation.
The Authority stresses the point that if claimant’s president had visited the Batavia, New York, contract site before making and placing its bid, he would have seen the site as it actually was and would have acted accordingly and on the basis thereof. A complete answer to that is that the grade and elevation of the site as set forth in the drawings having been found to be representations as hereinbefore concluded, upon this record the Authority cannot be heard to say it is not responsible. (Faber v. City of New York, 222 N. Y. 255.) Nor, under the circumstances herein, is the Authority relieved from liability for its failure to furnish claimant a site capable of receiving the work to be performed by claimant under its contract. (A. W. Banko, Inc., v. State of New York, 186 Misc. 491, 496.)
The recovery sought herein is on the theory of a breach of contract by the Authority, a theory chosen by claimant because it was unjustifiably required to remove the trees in spite of its protests. We think that claimant did not waive any right for said breach by proceeding with its work under protest, and that it is entitled to recover on that theory (Borough Constr. Co. v. City of New York, 200 N. Y. 149, 157). The question whether the removal of the trees required of claimant is embraced within the contract is fairly debatable, and its determination surrounded by doubt; and the Borough Construction Co. case is authority for the general rule that where a municipal representative, without collusion and against the contractor’s opposition, requires the latter to do something as covered by his contract, and the question whether the thing required is embraced within the contract is fairly debatable and its determination surrounded by doubt, the contractor may comply with the demand under protest and subsequently recover damages even if it turns out that he was right and that the thing was not covered by his contract.
It would seem that the removal of the trees was not contemplated by the provisions of the basic contract, and that the Authority breached its basic or main contract with the claimant *264 when it compelled the claimant, over the latter’s protest, to do the work as a contract item.
We conclude that claimant is entitled to recover the sum of $9,760 as demanded in the claim with interest thereon from January 18, 1955, said date not being questioned, to the date of the entry of judgment herein; and that claimant is entitled to recover against the State of New York the sum of $188.05, being interest at 4% from January 18, 1955 through August 26, 1955 on the amount o'f $7,764.54 heretofore awarded on the severed cause of action, judgment in that amount having been duly entered on August 26,1955 (Agostini v. State of New York, 255 App. Div. 264; Rusciano & Son Corp. v. State of New York, 278 App. Div. 999), with interest on said sum of $188.05 from August 26, 1955 to the date of the entry of judgment herein. (As to the item of interest on the sum. of $188.05 from August 26, 1955 to the date of the entry of judgment herein, see, Rusciano & Son Corp. v. State of New York, 201 Misc. 690, 706, affd. 281 App. Div. 733; Harvey Co. v. State of New York, 207 Misc. 1116, 1123.)
The foregoing constitutes our written and signed decision herein. (Civ. Prac. Act, § 440.)
Let judgment be entered accordingly.