Charles T. Major, J.
This is a claim for damages consisting of increased costs to claimant alleged to have been caused by State engineer’s wrongful and illegal refusal to approve the use for fill, or borrow from the privately owned lands for which claimant made arrangements prior to the execution of the contract hereinafter described.
On May 3,1954, claimant and the State entered into a contract, Number S. H. 54-5; ft. C. 54 — 49 for the construction and reconstruction of 4.12 miles of State highway, including grading, drainage, cement and asphalt pavement and two bridges, located in Lake Onondaga West Shore Development, Northwest Arterial, Baldwinsville-State Fair. The specifications, set forth in a book, are part of the contract. The borrow under this contract is earthly material to be brought onto the project from sources outside the State right of way. Selected borrow was to be *420 furnished (page 1 of proposal, item 2 CCS). On page 194 of the specifications, item 2 EC, subdivision-a, under title ‘ ‘ work ’ ’, in part provides: 1 ‘ All selected borrow shall be obtained in 'accordance with the procedure as outlined under the general specifications for excavation.”
The general specifications for borrow appear on page 184, paragraph “ f ” and in part state: “ The source and quality of the borrowed material shall be subject to the approval of the engineer at all times. Not less than five days notice shall be given by the contractor before taking material from any approved borrow pit. All borrow pits outside the highway shall be acquired by the contractor at his own expense, and no borrow shall be made on or within three hundred feet of the right of way without written permission of the engineer. Borrow pits adjacent to .the highway shall be left in a neat and satisfactory condition and shall be thoroughly drained.”
Prior to submitting its bid for the contract herein, claimant investigated sources of borrow, made borings and tests of the material on the properties owned by Clifford Richel, Max Paetzke, Arthur J. Moore and wife, and-Mrs. John Zogby; and after finding that such material was within the standards required by the State on other similar contracts and work, entered into oral agreements with such owners for removal of the material. Written agreements were thereafter signed with Clifford Richel, in May, 1954; Max Paetzke on June 3, 1954; and Mrs. John Zogby on May 3,1954; and by outright purchase of the Arthur J. Moore property on July 7, 1954. The agreements with the first three above-mentioned individuals provided for and claimant planned to comply with the State’s requirements as to grading and drainage of the property after removing the borrow. The evidence is devoid of any intent of removing the fill from within the area of 300 feet of the State’s right of way. This borrow was to be used between contract stations 232+00 and 271+67, a distance of 3,000 to 4,000 feet. Claimant included this borrow in the estimated quantities in its proposal, upon which it based its bid price, and which later became a part of the contract.
Claimant received a letter dated May 7, 1954 from the State district engineer, stating that he had a report that claimant planned to take borrow from these properties, quoting a letter from the secretary of the Onondaga County Park Board, and requested claimant’s reaction on the matter. On May 13, 1954, claimant answered by letter stating that such source of material was used in the preparation of its estimate, and the unit price bid for this borrow reflected its use. Claimant further stated *421 that to secure borrow from another source, would require the use of different type of excavating and hauling equipment than was contemplated, cause delay in progress of work, additional costs for longer haul, and more expensive methods of operation. Claimant, with letter dated June 3, 1954, further submitted, a plan of such properties indicating the proposed grading of borrow pit and later filed a corrected plan.
On June 7,1954, the State’s engineer wrote claimant acknowledging letter of June 3, 1954 and prints of grading plan of the proposed borrow pit and further stated:
“ Chapter 797 of the Laws of 1953 provides for the acquisition of these properties for development purposes relating-to the Lake Onondaga West Shore Development. Such acquisition is to be made as soon as the necessary appropriation maps can be prepared.
“Under the circumstances, I regret that they cannot be approved as a borrow location as requested.”
Claimant’s protest and reaction to such decision were already known to the State’s engineer and further discussion would serve no good purpose.
The State made no objection to the proposed borrow because of quality or type, or as to its location as such. The word “ location ” in the specifications associated as it is with the word quality, and bearing in mind other definite specifications as to the use of excavation within the State’s right of way, the requirement therein pertaining to the area 300 feet from the right of way and directions set forth regarding the condition in which contractors must leave a borrow pit on termination of its use, indicates that the word ‘1 location ’ ’ bears on quality and type. For example, it would not be beneficial to the project to use borrow from swamp or muck lands, or from a dumping ground which had been filled with debris and castoffs, such as garbage, cans and the like. In -any event, whatever its intent and purpose, the law requires it must be valid and founded on reason. The letters in evidence clearly show the intent. It is very evident the State’s engineer had no objection to the use of the sites in question before the contract was signed. His reluctance to approve developed some time after the signing of the contract, which came about after taking the matter up with the Onondaga County Park Board secretary. There is no evidence that the secretary knew the details of claimant’s agreement to grade and drain the properties. The grading of such borrow site properties could very well have been more advantageous after the removal of the borrow and grading by the claimant, especially for parking. It appears that the State engineer’s objection did *422 not exist at the time of advertising for bids or at the time the contract was let.
The State lays great importance to a brochure which was sent to claimant in November, 1952. This brochure is only a report to the Superintendent of Public Works, containing a proposed picturesque development prepared in the Fall of 1952, and no evidence is available to show that it was ever approved for construction. The receipt of this brochure did not constitute notice to claimant that the State intended to appropriate the proposed borrow sites.
The State urges as its most important argument against the claim herein that chapter 797 of the Laws of 1953 became a part of claimant’s contract. With this the court agrees, but finds that this law only expresses the legislative intent and authorizes and empowers the Superintendent of Public Works to take certain action.
At the time claimant negotiated and later signed the agreements to buy and remove the borrow, it had a constitutional right to do so, and the owners had a right to sell. The action of the district engineer was an interference with claimant’s work. The Superintendent of Public Works did not appropriate the properties with the borrow sites according to law, or serve any notice on the owners thereof, or on claimant informing* them of such appropriation, prior to the consummation of the agreements.
The filing of a map in the office of the Department of State does not constitute an appropriation. It was some time after the contract of construction was entered into between claimant and the State, work commenced and agreements made between claimant and the property owners for the borrow, that the State filed appropriation maps in Onondaga County Clerk’s office.
The State having failed to appropriate the properties containing* the borrow before claimant contracted to use it or provided for a prohibition of its use in the contract or specifications, the fair, reasonable and prudent action on its part was to permit its use, or to compensate claimant for the damage it sustained. The defective specifications were the fault of the State. The State had the benefit of the additional expense. It is fair to assume that with a clear and unambiguous contract, the original bid would have been figured accordingly.
Since the contract was drawn by the State, if the language used is capable of more than one construction, the court must resolve all doubts against the person who uses the language, and most beneficially to the promisee. (Gillet v. Bank of America,
*423 160 N. Y. 549, 555; Harnett Co. v. Thruway Auth., 3 Misc 2d 257.)
The recovery sought herein is one on the theory of a breach of contract by the State, — a theory chosen by claimant because it was injustifiably required to procure borrow from more distant locations in spite of its protests. The claimant did not choose to put itself in the attitude of refusing to obey the directions of the State engineer, thereby assuming the position of a defaulter under the contract, but preferred to perform the contract as best it could. The fact that the borrow was to be approved by the State engineer is not conclusive against claimant. That power cannot be exercised in an arbitrary manner, but reasonably and in accordance with fairness and good faith. (Gearty v. Mayor of City of N. Y., 171 N. Y. 61.)
The law is well settled that where a contractor is ordered by a proper municipal representative to furnish materials or to do work which the former thinks is not called for by its contract, the contractor may under protest do as directed, and subsequently recover damages. (Borough Constr. Co. v. City of New York, 200 N. Y. 149.)
By proceeding with its work under protest, claimant did not waive any rights for the breach of its contract. (Harnett Co. v. Thruway Auth., 3 Misc 2d 257, supra; Gearty v. Mayor of City of N. Y., 171 N. Y. 61, supra; Borough Constr. Co. v. City of New York, supra.)
On July 9,1956, the return date of claimant’s motion to amend the claim and for an order of severance, on which the State appeared by its Attorney-General, by Harold S. Coyne, Esq., Assistant Attorney-General, but without opposition to the granting of the relief requested, an order was made by this court amending claimant’s demand to $388,912.72, and granting an order of severance wherein claimant was granted judgment for the sum of $208,981.63, being the amount of the State’s final estimate, the interest thereon, if any, to be determined upon the trial of the issues of the balance of the claim in the amount of $179,931.07, which was reserved to claimant. The record of proceedings on July 9, 1956, at the time the order of severance was made, shows that the work was accepted by the State on December 20, 1955. The State sent the final agreement and estimate to claimant on March 13, 1956, which was returned unsigned by the claimant to the State on April 27, 1956.
In Rusciano & Son Corp. v. State of New York (278 App. Div. 999, 1000), the Appellate Division, Third Department, stated: “ "We feel it would be unfair to deprive a contractor of the *424 interest on moneys due Mm upon the performance of his contract merely because he was pressing for or intended to present a claim for damages sustained as an incident to his full performance.”
The claimant is entitled to interest on the severed sum of $208,981.63 from December 20, 1955, the date of acceptance of the work, to the date of payment thereof. The actual date of such payment does not appear in the record. The last date known to the court on wMch such interest remained unpaid was July 9, 1956. This is the date on wMch judgment was directed and consequently the date to wMch such interest shall be computed. At the rate of 4% per annum (State Finance Law, § 16), the interest amounts to $4,620.81, to be included in the award herein.
The court finds that the action of the State’s engineer was wrongful, illegal, arbitrary and unreasonable, and by reason thereof the State violated the terms of the contract. On the trial of tMs claim, it was stipulated that the amount of claimant’s damage in securing borrow from other sources, if the court found the State liable therefor, was the sum of $120,000, with interest thereon from February 9, 1958.
The claimant is entitled to and is hereby awarded the sum of $124,620.81, with interest on $120,000 from February 9, 1958 to date of entry of judgment herein.
The foregoing constitutes the written and signed decision of the court upon wMch judgment may be entered. (Civ. Prac. Act, § 440.)
Judgment is directed accordingly.