450 P.2d 714

**E. A. WEINTRAUB and Morris Weintraub, Appellants,**

**v.**

**FLOOD CONTROL DISTRICT OF MARI-COPA COUNTY, a municipal corporation, Appellee.**

**No. 1 CA–CIV 398.**

Court of Appeals of Arizona.

Feb. 24, 1969.

Rehearing Denied March 19, 1969.
Review Granted April 22, 1969.

Evans & Kunz, by Donald R. Kunz, Snell & Wilmer, by B. C. Porter, Phoenix, for appellants.

Donald D. Meyers, Phoenix, for appellee.

CAMERON, Judge.

This is an appeal by the defendants, E. A. and Morris Weintraub, from a summary judgment in favor of the plaintiff Flood Control District of Maricopa County.

We are called upon to determine:

1. Is the Flood Control District of Maricopa County authorized by statute to record a resolution designating certain property as being within a proposed flood control area?

2. Whether the defendants' property was "taken" or "damaged" by the action of the Flood Control District in so recording.

■ Viewing the evidence most favorably to the person against whom the summary judgment was granted, Sarti v. Udall, 91 Ariz. 24, 369 P.2d 92 (1962); Lujan v. MacMurtrie, 94 Ariz. 273, 383 P.2d 187 (1963), we find the following facts necessary for a determination of this matter on appeal.

Defendants, E. A. Weintraub and Morris Weintraub, were the buyers under an agreement to purchase of some 2,240 acres of land northwest of Phoenix. The agreement was entered into in July of 1959 and a policy of title insurance was issued guaranteeing the said land to be free and clear of all encumbrances.

The allegations in the record indicate the Flood Control District of Maricopa County was formed pursuant to legislation permitting special flood control districts which legislation became effective 23 March 1959. § 45–2351 et seq., A.R.S. By statute the district was given the power to acquire by eminent domain or otherwise rights-of-way to construct, operate, and maintain flood control works, etc., "within or without the district for benefit of the district." § 45–2360 A.R.S. § 45–2361 provided as follows:

"§ 45–2361. Survey and report of flood control problems and facilities; comprehensive program; adoption by board; hearing

"A. After a flood-control district has been established, the board of directors shall cause its chief engineer to make or have made by the flood-control engineer, or by qualified private engineers, a survey of the flood-control problems of the district and to prepare a report setting forth a description of existing flood-control facilities in the area * *. Before submission to the board of directors the report shall be submitted to the advisory board for its review and recommendations.

"B. The chief engineer and his staff shall then prepare a comprehensive program of flood control, taking into consideration the recommendations submitted in the report. When a comprehensive program satisfactory to the board of directors is available, it shall be tentatively adopted, and a public hearing on the program and the performance of the proposed work shall be scheduled. Notice of the hearing shall be given by publication once a week for two successive weeks in a newspaper having general circulation in the district, the first of which publication shall be at least ten days prior to the date fixed for the hearing. After hearing and any adjournments thereof which may be ordered, the board of directors may either require such changes to be

made in the program as it shall consider desirable, or may approve the program as made. In the event changes are ordered, a further hearing shall be held pursuant to notice of the hearing, which shall be given by publication once a week for two successive weeks in a newspaper having general circulation in the district, the first of which publication shall be at least ten days prior to the date fixed for the hearing."

On 23 May 1960 the following resolution of the Board of Directors was passed and as per direction a copy of said resolution with accompanying map was recorded in the Office of the Maricopa County Recorder:

"WHEREAS, the Maricopa County Flood Control District was organized on August 3, 1959, pursuant to the provisions of Title 45, Chapter 10, Article 5 of the Arizona Revised Statutes of 1956 as amended, and

"WHEREAS, prior to the organization of the Maricopa County Flood Control District as aforesaid and subsequent thereto, the United States Corps of Engineers, the Maricopa County Highway Department, and recently the Flood Control Engineer, have caused surveys and engineering studies to be made in Maricopa County to determine possible flood control areas, location of flood control dams and reservoirs, and

"WHEREAS, it has been determined that a contemplated and proposed flood control area consisting of a reservoir and dam may need to be located in Sections 22 through 27, and 34 and 35, Township 5 North, Range 1 East, Gila and Salt River Base Meridian, and

"WHEREAS, it is in the best interest of the inhabitants of Maricopa County and the Maricopa County Flood Control District that all persons or legal entities who claim an interest in the aforesaid properties or who contemplate placing improvements thereon be notified by the Board of Directors of the Maricopa County Flood Control District of the aforesaid contemplated flood control projects,

"NOW, THEREFORE, BE IT RESOLVED, that a copy of this resolution, together with a map which reflects the area of the proposed reservoir and dam on the New River located in Sections 22 through 27, and 34 and 35, Township 5 North, Range 1 East, Gila and Salt River Base Meridian, be included in the minutes of the Maricopa County Flood Control District and be included as a public record in the Maricopa County Board of Supervisor's Office and recorded in the Maricopa County Recorder's Office so that all parties who have an interest therein will be afforded notice of the Maricopa County Flood Control District's proposed projects in the aforesaid area."

Both by description and by map the Weintraubs' property was included therein.

On 24 February 1961 the Flood Control District was notified by the Weintraubs of their objection to the recording of this document. It is the contention of the Weintraubs that at this time they had tried to sell this property and were informed by the title company that the title had been clouded by the filing of this resolution. Thereafter, the Board of Directors of the Flood Control District of Maricopa County passed a resolution which, after noting defendants' objections that the resolution "amounts to a taking of their property without due process of law and * * * is an unlawful and illegal interference with the enjoyment and possession of their property" rescinded the resolution and then stated:

"BE IT FURTHER RESOLVED, that the said directors desire and intend to pass and place of public record notice of the contemplated flood control area set forth in the Resolution of May 23, 1960, and notice of other proposed flood control areas as engineering studies are completed, therefore, IT IS RESOLVED that the Flood Control District of Maricopa County forthwith institute the

appropriate legal proceedings to seek a determination of the district's duty and obligation to give public notice of the proposed flood control areas within the district and to determine whether the giving of such notice by making the same part of the public record of the County constitutes a taking or damage to property without due process of law.

DATED this 12th day of June, 1961." Pursuant thereto a complaint for declaratory judgment was filed by the District and after answers and counterclaims including affidavits on file the court granted summary judgment in favor of the plaintiff Flood Control District. B. W. Burns, Mrs. James T. O'Neil and James E. Lindsay, as members of the Board of Directors of the Flood Control District, were joined individually, but by motion they were dismissed out and we are concerned herein only with the Flood Control District as a party.

## DID THE STATUTE AUTHORIZE THIS ACTION?

■ Under the statute, after a special flood control district is formed, the engineer is directed to submit to the Board of Directors a preliminary plan and map showing the work proposed to be done and property taken or damaged and an estimated cost of the proposed work (§ 45–2361, subsec. A). This is all that is required or allowed in the preliminary stage. After a comprehensive program is prepared a public hearing shall be scheduled. Subsection B provides "[n]otice of the hearing shall be given by publication once a week for two successive weeks in a newspaper having general circulation * * *." and changes may be made after the hearing. In other words, the statute clearly provides for notice and hearing before a flood control plan may be adopted by the Board. We have no argument with the proposition that the district may take property for the district if it follows the statute:

"* * * it seems clear that the legislature has sufficiently expressed the in-

tent that flood control districts should have the power of eminent domain for the purpose of constructing flood control projects so as to satisfy the requirements of the *Donofrio* case." Magma Flood Control District v. Palmer, 4 Ariz.App. 137, 141, 418 P.2d 157, 161 (1966).

■ We do not believe, however, that the legislature provided for the procedure followed by the Board in this matter. Neither do we find in the police power the right to file of record intentions of the Board which might adversely affect the development of the property in the area no matter how well intentioned the motive of the Board may be in so doing:

"* * * While, as the State points out, the need for highways is pressing, the property of appellees may not be taken without compensation, nor may they be deprived of the use and enjoyment· of such property for an indefinite period, *in the guise of regulation,* even for a public purpose. Thus, in Pennsylvania Coal Co. v. Mahon, Mr. Justice Holmes stated '* * * that while property may be regulated to a certain extent [under the police power], if the regulation goes too far, it will be recognized as a taking.' 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322.

"* * * 'We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change.' 260 U.S. at page 416, 43 S.Ct. at page 160.

   *     *     *     *     *     *

"We hold that the interference with private property rights prescribed by section 18—155 (D) is neither an appropriate nor justifiable means for exercising the State's police power." State ex rel. Willey v. Griggs, 89 Ariz. 70, 75, 358 P.2d 174, 177 (1960).

We find nothing in the statute or in the inherent powers of flood control districts which give them the right to record the

resolution cited herein and if the pleadings indicated that the defendants might have been damaged the court was incorrect in granting summary judgment.

## WAS DEFENDANTS' PROPERTY DAMAGED?

Article 2, Section 17 of the Arizona Constitution, A.R.S. reads as follows:

"§ 17. Eminent domain; just compensation for private property taken; public use as judicial question.

"Section 17. Private property shall not be taken for private use, except for private ways of necessity, and for drains, flumes, or ditches, on or across the lands of others for mining, agricultural, domestic, or sanitary purposes. No private property shall be *taken* or *damaged* for public or private use without just compensation having first been made * * *." (emphasis ours)

Defendants contend that the unauthorized action of the District in recording the resolution constituted an interference with defendants' rights in their property and was neither justifiable nor appropriate under the police power of the state. With this we agree.

■ The law seems to be clear that adoption of a plan or the filing of a plan with a board or commission does not in itself create a right of action. City of Houston v. Biggers, Tex.Civ.App., 380 S.W.2d 700 (1964), cert. den. 380 U.S. 962, 85 S.Ct. 1105, 14 L.Ed.2d 153 (1965):

"The filing of the map, without registration, on October 15, 1936 was entirely nugatory. Without registration, it was incapable of giving notice to anyone, however careful he might be to ascertain and protect his rights." Martin v. United States, 4 Cir., 270 F.2d 65, 68 (1959).

The cases do indicate, however, that when there is a recording a taking or damaging can occur:

"The filing of a map in the office of the Department of State does not constitute an appropriation. It was some time after the contract of construction was entered into between claimant and the State, work commenced and agreements made between claimant and the property owners for the borrow, that the State filed appropriation maps in Onondaga County Clerk's Office." D. W. Winkelman Company v. State, 17 Misc.2d 418, 184 N.Y.S.2d 661, 666 (1959).

■ We believe that in the instant case the recording of the notice may have "damaged" the property by affecting its marketability:

"The fact that plaintiff still has his property is no satisfaction for the damages that he has suffered. A taking of any kind or an infringement on the use of his property that would diminish its value in whole or in part is a loss for which he should be compensated." Maricopa County Municipal Water Conservation Dist. No. 1 v. Warford, 69 Ariz. 1, 11, 12, 206 P.2d 1168, 1175 (1949).

And:

"Federal law recognizes that, although there may be no official intention to acquire any property interest, certain governmental actions entail such an actual invasion of private property rights that a constitutional taking must be implied." Eyherabide v. United States, 345 F.2d 565, 567, 170 Ct.Cl. 598 (1965).

We therefore hold that under the record in this case there was a question as to whether the property was "damaged" or "taken" under our Constitution.

■ Nothing we say herein should indicate the extent of the damages suffered by the Weintraubs, if any there be, but we do believe that they have a right to be heard on the matter before a judgment is granted:

"The decisions of our Supreme Court and this Court make it clear that judgment on the pleadings pursuant to Rule 12(c) or summary judgment pursuant to Rule 56 may not be granted where there is a

genuine issue of fact. * * *" Brown v. White, 4 Ariz.App. 255, 257, 419 P.2d 385, 387 (1966).

Judgment reversed and the matter is remanded for further proceedings consistent with this opinion.

DONOFRIO, C. J., and STEVENS, J., concur.