317 P.2d 537

Walker McCUNE and Barbara N. McCune, his wife, and Martha A. Sturdevant Harpst, Appellants,

v.

The CITY OF PHOENIX, a municipal corporation, Jack Williams, as Mayor of the City of Phoenix, V. A. Cordova, Dr. Joseph Madison Greer, G. Wesley Johnson, David P. Jones, Faith I. North, and Clarence Shivvers, as councilmen of the City of Phoenix, Ray W. Wilson, as city manager of the City of Phoenix, John E. Burke, as city clerk of the City of Phoenix, Phoenix Newspapers, Inc., a corporation, and Henry R. Kiel, as editor and publisher of the Arizona Weekly Gazette, a division of Phoenix Newspapers, Inc., Appellees.

No. 6354.

Supreme Court of Arizona.

Nov. 5, 1957.

Botsford & Turner, Scottsdale, for appellants.

William C. Eliot, City Atty., and George Mariscal, John F. Mills and Dale E. Marenda, Asst. City Attys., Phoenix, for appellees.

WINDES, Justice.

Suit was filed by the appellants (plaintiffs below) to enjoin the appellees (defendants

below) from annexing certain territory to the city of Phoenix. After trial judgment was rendered for the defendants and plaintiffs appeal, contending that the trial court's judgment is erroneous for the reasons that the petition seeking annexation was not signed by the owners of fifty percent of the property valuation which would be subject to taxation in the event the territory was annexed; that the annexation ordinance encompassed more territory than that set forth in the petition; that the city of Phoenix has no jurisdiction for the reason that petition to annex a portion of the same territory to the town of Scottsdale was filed with its town clerk prior to the filing of the Phoenix petition; and that an accurate map of the territory annexed was not filed and recorded as required by statute. We will dispose of the questions thus presented in the order stated.

The total assessed valuation of the property annexed was $661,463.25 and the statutory valuation necessary on the petition was $330,731.63. The total assessed valuation of the property represented by the petition including certain claimed illegal signatures was $345,303.02. The appellants claim that the court committed error by including in the valuation represented by the petition the following items:

| | |
|---|---|
| James E. Thompson et ux. | $ 3,795.00 |
| Charles Christakis | 7,395.00 |
| Georgia Swerdlow | 2,485.00 |
| Sam Swerdlow | 2,485.00 |
| Bruce I. Leyton | 3,545.00 |
| Howard Smith and Dessie Smith | 3,270.00 |
| George S. Martin | 2,190.00 |
| William P. Leistiko et ux. and A. L. Lundren et ux. | 2,890.00 |
| Helen Gazse | 4,745.00 |
| Total | $32,800.00 |

■ Thompson signed the petition whereas the assessment roll shows that the taxes for this property were assessed in the name of Olive Magdalene Raley. Appellants' argument is that since A.R.S. § 42–205, provides that the assessment roll is prima facie evidence of the facts stated therein it is proved that Thompson did not own the property when he signed the petition. This position is not correct. The fact stated in the assessment roll is that Raley owned the property at the time of the assessment. The strongest possible effect that can be given this evidence, assuming it prima facie shows Raley owned the property at the time of the assessment, would be a presumption that such ownership continued until the contrary is shown or a different presumption is raised. 20 Am.Jur., Evidence, section 207, page 205. The ordinance having been passed, its validity must be presumed. 62 C.J.S. Municipal Corporations § 208, p. 389. We thus have a possible presumption against a presumption. This is not sufficient to show the invalidity of the signature.

■ The record shows that the petition was signed by Leistiko and Lundren and their respective wives. The property was

in the name of Clay Shop, a corporation. The parties signing owned all the stock of the corporation and Leistiko was president and Lundren secretary and treasurer. The thought is advanced that since they signed as owners individually and not in the name of the corporation, the valuation must be excluded. This is a distinction without a difference. When all the stockholders who are the beneficial owners sign, that is sufficient.

Georgia Swerdlow signed her name for separate property owned by her husband Sam and signed for community property by signing his name. Both Mr. and Mrs. Swerdlow testified that he authorized his wife to sign for both properties. Since it appears that all interested parties consented, the valuation should be considered.

As to the Bruce Leyton property, the petition was signed "Bruce Leyton by M. Leyton" and also signed "Marion C. Leyton". The argument for invalidity is that when the ordinance is attacked, the city has the burden of proving authority of the agent. This is not correct. The ordinance and proceedings authorizing its adoption are presumed to be regular. The burden was on plaintiff to submit evidence of invalidity, including lack of authority of the purported agent. No such evidence was submitted. This property was properly included.

The Howard Smith signature was not dated and he could not remember exactly when he signed. The record shows it was signed at the time of presentation to the commission. This valuation was properly included.

Helen Gazse signed the petition. At the trial it developed she had been married a number of years and that the property represented in the petition was the community property of herself and her husband. We have held that if the property be community, the wife may at the instigation of her husband sign for both herself and her husband. City of Phoenix v. State of Arizona, 60 Ariz. 369, 137 P.2d 783, 146 A.L.R. 1255. The validity of an annexation ordinance being presumed, the one attacking it bears the burden of proving invalidity. 62 C.J.S., § 208, supra. This presumption includes the presumption of validity of the petition. Town of Greenfield v. City of Milwaukee, 272 Wis. 388, 75 N.W.2d 434. When a wife signs for community property and conditions may exist which render the petition valid, the plaintiff having the burden of showing invalidity must submit some evidence of conditions that would render it invalid. Merely showing there was community property is not sufficient to overcome the presumption of validity. The council initially has no burden to support its action in passing the ordinance.

■ Charles Christakis signed the petition as commander of the Veterans of Foreign Wars Post No. 720. He testified he had no express authority from the post and that he did not know whether he had such authority. The constitution and by-laws of the organization in evidence sets out the duties and powers of post commanders and nothing therein could be interpreted as giving express or implied authority. Certainly the signing of annexation petitions is not connected with or incident to his duties as post commander. The council could not legally count the valuation represented by this signature in the sum of $7,395.

■ The Geo. F. Martin signature represented a valuation of $2,190. It is admitted that this valuation also was represented in the petition by the signature of John Martin thus resulting in double evaluation for the same property. This item should be deducted.

The two items improperly counted total $9,585 which should be deducted from the total valuation heretofore stated of $345,303, leaving an aggregate value of $335,718.02 which is in excess of the needed valuation of $330,731.63.

The petition for annexation designated a portion of the north boundary of the proposed territory as the "north line of Thomas road". Prior to the filing of the petition, pursuant to the provisions of section 59–601,

A.C.A.1939 (now A.R.S. §§ 18–201 to 18–205, inclusive), the board of supervisors of Maricopa county adopted a resolution, the effect of which was to declare the boundaries of Thomas road changed by adding seven feet on both the north and south sides and declaring the same as altered to be a public highway. A map of the road as declared by the board was regularly filed in the county recorder's office. The portion of the boundary described in the petition as the north boundary of Thomas road was described in the ordinance of annexation in conformity with the line established by the resolution. The question thus presented is what is the north boundary line of Thomas road—the line as it existed before the resolution or the line designated in the resolution?

Plaintiff contends that section 59–601, supra, is unconstitutional and the proceedings of the board thereunder are null and void and therefore by using the description of the resolution, the ordinance embraced more territory than that described in the petition. Section 9–471, subsection (B), A.R.S., prohibits the city from adding to the territory described in the petition. Consequently, it becomes necessary to determine the validity of the proceedings of the board.

Section 59–601, supra, gives the board of supervisors the power to establish, alter or abandon highways and condemn property therefor and prescribes the procedure to be followed in exercising the power. Among

other procedural provisions, it provides that after hearing pursuant to petition of resident taxpayers a board of appraisers shall be appointed to assess and determine the fair amount of compensation and damages to which each landowner or party affected is entitled and report in writing to the board of supervisors. The statute provides for a final hearing after which the board may either reject the petition or order the establishment, alteration or abandonment as requested. In the event the petition is to be allowed, the statute provides:

"The judgment of the board shall be adopted by resolution and so recorded in the minutes of said board together with the order condemning and appropriating to public use all lands, estate, interest or thing described as prayed for in said petition, or any part thereof, and shall award to each claimant compensation for property taken and payment for damages. When the board shall have filed in the office of the county recorder of the county wherein the said highway is located, a record of its judgment together with a map of the highway, said highway shall thereafter be established, altered or abandoned."

Provision is then made giving a dissatisfied owner the right of appeal to the superior court provided he gives bond to be approved by the board in double the amount of the probable appeal costs and such appeal is to be tried on the record made before the board and such further evidence as the court may receive.

Arizona Constitution, article 2, section 17, A.R.S., tells us what an owner's rights are when private property is to be taken or damaged for public use. It prescribes that he shall have just compensation and the same "shall be ascertained by a jury" (unless waived) as in other civil cases "in courts of record, in the manner prescribed by law." In harmony with this constitutional mandate, section 27–909, A.C.A. 1939 (now A.R.S. § 12–1116) requires that all proceedings for condemnation must be brought in the superior court in the same manner as other civil actions. It is our view that the legislature cannot legally give the board of supervisors the power to condemn private property for public use, to assess the compensation to be paid the owner, to require him to give bond and appeal and to try the matter so appealed on some record made before the board of supervisors even though he might submit additional evidence. This is not ascertaining compensation and damages as in other civil cases in courts of record. To the extent that section 59–601 purports to empower the board to assess compensation or damages it offends the Arizona constitution, article 2, section 17, and cannot be given validity.

The resolution of the board does not include an order condemning any prop-

erty or awarding compensation, the board possibly expecting to resort to section 27–909, A.C.A.1939, to effect any necessary condemnation, which we recently ruled it could do. County of Maricopa v. Anderson, 81 Ariz. 339, 306 P.2d 268. Whether the entire proceeding of the board is of no effect depends upon whether the invalid features of the statute are separable from the valid features so that the inoffensive portion may remain as law. We have several times announced the guide to determine whether such a separation may be made without voiding the entire statute. Generally, we have said that if the valid parts are independently effective and enforceable as law and if the valid and invalid portions are not so intimately connected as to raise the presumption that the legislature would not have enacted the one without the other and if the invalid portion was not the inducement for the passage of the entire act, the court will not disturb the constitutional portion of the act. Gherna v. State, 16 Ariz. 344, 146 P. 494; Alabam's Freight Co. v. Hunt, 29 Ariz. 419, 242 P. 658; Millett v. Frohmiller, 66 Ariz. 339, 188 P.2d 457. It is not absolutely essential to severability that the constitutional and unconstitutional features be contained in separate sections. Gherna v. State, supra.

We are clearly of the view that the offensive provisions of this act are separate and the rest of the act may operate effectively as an independent and complete law. In view of the provisions of section 27–909 providing a legal method of condemnation, the condemnation features of section 59–601 are not so connected as to raise a presumption that the legislature would not have given the power to establish, alter and abandon roads and provide a procedure for accomplishing the same merely because the board would have to resort to section 27–909 to effect condemnation. Nor do we think including the provision concerning assessment of compensation and damages was any inducement that impelled the enactment of the portion of the law which gives the power to establish, alter and abandon roads and provides the procedure therefor. Consequently, our view is that the portion of the act empowering the board of supervisors to assess damages and award compensation is invalid and the remainder of the act is valid and enforceable. The result is that the resolution established the north boundary of Thomas road as delineated therein and the annexation ordinance does not embrace more territory than that set forth in the petition.

Petition for the annexation to the Town of Scottsdale of a portion of the same territory covered by the Phoenix annexation ordinance was filed with the town clerk before the petition for annexation to Phoenix was filed with its city clerk. No steps had been taken by the town council of Scottsdale to consider its petition prior to

the time Phoenix considered and acted upon the petition presented to its council. It is urged that Phoenix had no jurisdiction because Scottsdale's petition was filed first. When a conflict in claimed jurisdiction of two municipalities over the same territory arises, the rule is that the one first acquiring jurisdiction has the right to proceed in the exercise thereof. Plaintiff recognizes this as the rule and claims that Scottsdale acquired jurisdiction first by the filing with its clerk. Reliance is placed upon our holding in Colquhoun v. City of Tucson, 55 Ariz. 451, 103 P.2d 269. Therein a petition was filed with the clerk of the board of supervisors asking that an election be held to determine whether certain territory should be incorporated as a town. After such filing, petition was filed with the city of Tucson for the annexation of the same territory, and its council proceeded to consider the same. At this time no action had been taken by the board of supervisors upon the petition filed with its clerk. This court held that the board acquired jurisdiction upon the filing of the petition with its clerk even though the board had taken no steps to consider the same. We also held in the case of State ex rel. De Concini v. City of Phoenix, 74 Ariz. 46, 243 P.2d 766, that the city did not acquire jurisdiction for the purpose of annexing territory by the mere filing of the petition with the city clerk but that jurisdiction did not attach until the matter was presented to the council for action

thereon. First impression is that the two decisions conflict but we think there is a distinction. One of the reasons for holding in the Colquhoun case that the board of supervisors acquired jurisdiction merely upon filing of the petition was that the law requires the clerk of the board to file all petitions. We have not been cited to any comparable law requiring town or city clerks to file annexation petitions. Section 9–471, A.R.S., says that upon presentation of a petition seeking annexation of territory the council may act. Section 22, chapter IV, of the city of Phoenix charter provides that any citizen of the city may appear before the council and present a written petition and that the council shall act upon it in the regular course of business within fifteen days. In harmony with the rule announced in State ex rel. De Concini v. City of Phoenix, supra, we hold that the town of Scottsdale did not acquire jurisdiction upon the mere filing of the annexation petition with its town clerk without presentation to the town council for action and that the city of Phoenix acquired jurisdiction first.

Section 9–471, supra, requires that an accurate map of the territory to be annexed must be filed with the annexing ordinance. Plaintiff claims this was not done. The evidence does not show any substantial difference between the description set forth in the ordinance and the delineation there-

of on the accompanying map. There are one or two possible minor deviations but we think from the descriptions, the map and the testimony in explanation thereof, the boundaries to be annexed can be accurately determined.

The judgment is affirmed.

UDALL, C. J., and PHELPS and JOHNSON, JJ., concur.

STRUCKMEYER, J., having announced his disqualification, did not participate in the determination of this appeal.