456 P.2d 936

**E. A. WEINTRAUB and Morris Weintraub, Appellants,**

v.

**FLOOD CONTROL DISTRICT OF MARICOPA COUNTY, a municipal corporation, by W. B. Burns, Mrs. James T. O'Neil, and L. Alton Pat Riggs, its directors, Appellee.**

No. 9612–PR.

Supreme Court of Arizona.

In Banc.

July 10, 1969.

Evans & Kunz, by Donald R. Kunz, Snell & Wilmer, by B. C. Porter, Phoenix, for appellants.

Shimmel, Hill, Kleindienst & Bishop, by Rouland W. Hill, Donald D. Meyers, Phoenix, for appellee.

McFARLAND, Justice.

Appellee Flood Control District of Maricopa County, a municipal corporation— hereinafter referred to as the District— petitioned this Court for and has been granted a review from a decision of the Court of Appeals, Division One, which reversed a summary judgment in favor of the District, and granted judgment in favor of appellants, E. A. and Morris Weintraub —hereinafter referred to as the Weintraubs. 9 Ariz.App. 202, 450 P.2d 714. Decision of the Court of Appeals vacated.

The Weintraubs owned 2,240 acres of land located a few miles outside the City of Phoenix. On May 23, 1960, the District gave public notice of the possibility that in the future certain property, or a part thereof, might be needed for flood-control purposes. (The described property included part of the Weintraubs' land.) Notice was given by the adoption and later recording of the following resolution:

"WHEREAS, the Maricopa County Flood Control District was organized on August 3, 1959, pursuant to the provisions of Title 45, Chapter 10, Article 5 of the Arizona Revised Statutes of 1956 as amended, and

"WHEREAS, prior to the organization of the Maricopa County Flood Control District as aforesaid and subsequent thereto, the United States Corps of Engineers, the Maricopa County Highway Department, and recently the Flood Control Engineer, have caused surveys and engineering studies to be made in Maricopa County to determine possible flood control areas, location of flood control dams and reservoirs, and

"WHEREAS, it has been determined that a contemplated and proposed flood control area consisting of a reservoir and dam may need to be located in Sections 22 through 27, and 34 and 35, Township 5 North, Range 1 East, Gila and Salt River Base Meridian, and

"WHEREAS, it is in the best interest of the inhabitants of Maricopa County and the Maricopa County Flood Control Dis-

trict that all persons or legal entities who claim an interest in the aforesaid properties or who contemplate placing improvements thereon be notified by the Board of Directors of the Maricopa County Flood Control District of the aforesaid contemplated flood control projects.

"NOW, THEREFORE, BE IT RESOLVED, that a copy of this resolution, together with a map which reflects the area of the proposed reservoir and dam on the New River located in Sections 22 through 27, and 34 and 35, Township 5 North, Range 1 East, Gila and Salt River Base Meridian, be included in the minutes of the Maricopa County Flood Control District and be included as a public record in the Maricopa County Board of Supervisor's Office and recorded in the Maricopa County Recorder's Office so that all parties who have an interest therein will be afforded notice of the Maricopa County Flood Control District's proposed projects in the aforesaid area.

"DATED this 23 day of May, 1960."

Nine months after the recording of the resolution, the Weintraubs demanded that the resolution be rescinded, claiming that their property had been taken by inverse eminent domain without compensation. About three and a half months thereafter, the District complied with the demand and passed a resolution which rescinded its former resolution, which also was recorded. Five months later the District filed this action for a declaratory judgment that the adoption and recording of the resolutions did not constitute a taking or a damage to the Weintraubs' property. The Weintraubs also counter-claimed for damages to their land in the total amount of $2,688,000. The trial court granted summary judgment in favor of the District, holding that the adoption and recording of the resolutions did not constitute or amount to a taking or damage. The judgment read, in part, as follows:

"That the pleadings herein raise a single issue of law, to-wit: Whether the adoption and recording of such aforesaid resolutions by the plaintiff constituted a taking or a damaging of defendant's property for which the defendants are entitled to be compensated; that there is no genuine issue as to any material fact affecting such issue of law and that, as a matter of law, plaintiff's motion should be granted and plaintiff should have the relief prayed for in its complaint for Declaratory Judgment and the defendants should be denied relief on their counter-claim.

"NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

"1. That plaintiff's actions consisting of adopting the said resolution of May 26, 1960, or of adopting substantially similar resolutions, of including any such resolutions in the minutes of the plaintiff's Board of Directors and in the records of the Board of Supervisors of Maricopa County, and of recording any such resolutions in the office of the County Recorder of Maricopa County, or of making any other publication of any such resolutions, is within the lawful powers and authority granted to the plaintiff by the Constitution and laws of the State of Arizona and does not constitute or amount to an unlawful taking or damaging of the property described in any such resolution which would entitle the owners thereof or persons claiming an interest therein to be compensated in damages therefor.

"2. That plaintiff's actions of adopting the resolutions dated May 23, 1960 and June 12, 1961, of including such resolutions in the minutes of plaintiff's Board of Directors and in the records of the Board of Supervisors of Maricopa County, and of recording them in the office of the County Recorder of Maricopa County, did not cloud the title of defendants' property described in such resolutions and did not constitute or

amount to an unlawful taking, *pro tanto* taking or damaging of such property or of any property rights therein of the defendants for which defendants are entitled to be compensated in damages."

█ The law is settled in Arizona, as stated in Gardiner v. Henderson, 103 Ariz. 420, 443 P.2d 416, that:

"* * * *a taking* * * * *commences with an order of immediate possession* which permits the condemnor to enter the land, demolish the improvements, and commence the erection of public improvements * * *." [Emphasis added.]

Other jurisdictions have uniformly held that the mere publication of the fact that particular or specified property may be the subject of a future appropriation or condemnation action, or the plotting or planning thereof, is not a taking or damaging of such property entitling the owner to be compensated therefor. Bakken v. State of Montana, 142 Mont. 166, 382 P.2d 550; City of Houston v. Biggers, Tex.Civ.App., 380 S.W.2d 700; 29A C.J.S. Eminent Domain § 135, p. 533; 26 Am.Jur.2d, Eminent Domain, § 169; Anno. in 64 A.L.R. 546.

In the case of Hempstead Warehouse Corporation v. United States, 98 F.Supp. 572, 120 Ct.Cl. 291, it is stated:

"Defendant was contemplating the expansion of Mitchel Field, an airport, and the plan of expansion took in plaintiff's property. This plan was widely publicized, and plaintiff says that this prevented it for a long time from selling the property and for this undefined length of time it is entitled to the rental value of the land.

"It is obvious that there is more than one weakness in plaintiff's position, but it suffices to say that a threat of condemnation is not a taking, as plaintiff confesses * * *."

In City of Houston v. Biggers, supra, the court held:

"* * * Even though it might have, as a practical matter, interfered with the marketability of the property, it would cause but an incidental damage which is not compensable. The fact that at some future time land might be taken under eminent domain, even where the threatened taking is imminent, is but one of the conditions on which an owner holds property."

It is contended by the Weintraubs in their brief that the Board of Directors acted without authority when it caused the resolution to be recorded.

█ Section 45–2361, as amended, of Arizona Revised Statutes, defines the procedure to be followed in order to effectively adopt or approve a comprehensive program of flood control. It is argued by the Weintraubs that the Board of Directors acted in derogation of that statute.

The Board of Directors, by giving public notice of a possible future flood-control program, was not substituting a method for adoption of a comprehensive program which is different from that set forth in A.R.S. § 45–2361, as amended. Rather, the Board of Directors recorded the resolution for the following expressed reason:

"* * * it is in the best interest of the inhabitants of Maricopa County and the Maricopa County Flood Control District that all * * * who claim an interest in the aforesaid properties or who contemplate placing improvements thereon be notified by the Board of Directors of the Maricopa County Flood Control District of the aforesaid contemplated flood control projects."

In Gardiner v. Henderson, supra, we held:

"The immediate taking of possession of property by a municipality is a taking of property. Possession is certainly one of the greatest attributes of ownership of property. The possessor exercises dominion over the property, and a condemor, be it municipality or private corporation thereafter denies the owner of its usage, its rental value, and its enjoyment. Where the condemnor proceeds to covert the property to its public usage he proceeds to 'damage' the property.

While a taking may not be complete until after final judgment and vesting of title, a taking nevertheless commences with an order of immediate possession which permits the condemnor to enter the land, demolish the improvements, and commence the erection of public improvements. It follows therefor [sic] that an order of immediate possession must comply with Art. 2, § 17, supra.

" 'It is obvious from the provisions of the Constitution and laws of this state that private property may not be taken for public use without just compensation having first been made *or paid into court for the owner*. The portion of the Constitution quoted above is mandatory.' State ex rel. Morrison v. Jay Six Cattle Company, 85 Ariz. 220, at page 224, 335 P.2d 799, at page 801. [Emphasis in original]"

■ The resolution adopted did not result in a taking of possession of the property; there was neither an order for possession nor payment of compensation which we have held to be mandatory. Therefore, the passing of the resolution did not result in inverse eminent domain as contended by the Weintraubs. The resolution not having resulted in the necessary steps for the taking of the property, the title was not affected. The District not having acquired any interest or title to the property, the Weintraubs, as far as the District was concerned, could have conveyed clear title.

The Weintraubs, however, contend that the recording of the resolution was unauthorized and they were damaged thereby and therefore should receive compensation. The purpose of recording of an instrument is to give notice. Therefore, the question is whether such notice of acts and proposed acts of the project constituted a damaging of the property. It has been held that the mere plotting or planning for public improvements is not a taking or damaging of property. In Stafford v. People [of California], 144 Cal.App.2d 79, 300 P.2d 231, the court said:

" * * * It is alleged that defendants propose to locate a highway through the lots which would destroy the oil wells and compel their abandonment and that defendants have paid nothing and propose to pay nothing for plaintiff's interest in the lots. It is alleged that there is another and better route for the highway which would not involve the taking of plaintiff's property. The complaint prays. for $250,000 as damages * * *.

\* \* \* \* \* \*

"The all-important and determinative fact in the present case is that no cause of action existed in favor of plaintiff for the taking or damaging of his property. According to the allegations of the complaint no property had been taken and none had been damaged. It was alleged only that the defendants intend to open a highway through the property. Not until his property is taken or damaged will he have any right to compensation * * *.'"

In Chicago Housing Authority v. Lamar, 21 Ill.2d 362, 172 N.E.2d 790, the court, in passing upon the question of whether land was damaged by reason of preliminary procedure, looking toward appropriation of land for public use, held:

" ' * * * Certain injuries are necessarily incident to the ownership of property within a municipality possessing the power of eminent domain, which may indirectly impair its value but for which the law does not and never has afforded relief.' We think the Eckhoff case is especially in point. The property owner there claimed damages for a diminution of value caused by 13 years delay between the declaration of the necessity of taking the land, serving of notices, and negotiations for purchase, and the actual filing of the condemnation petition. We held that the property owner was not entitled to compensation for alleged damages caused by such delay, and said at page 214 of 377 Ill., at page 248 of 36 N.E.2d: 'It seems obvious that the taking or damaging of land by eminent domain is not accomplished by passing resolutions or or-

dinances, nor by negotiating with the owner for the purchase of it, or serving notices upon him that the land may be required for public purpose. The series of corporate actions by the appellee district, complained of, cannot be said to have had the same effect upon their land as the filing of a condemnation petition. Such could not, in any sense, be held to be the taking of land or damaging of land not taken. The fact that at some future time a municipal corporation, with power of eminent domain, may require the land of a private owner, is one of the conditions on which the owner holds land in this State.'

"We have scrutinized each and every allegation of damage in the defendant's petition and conclude that they are the type of damage for which the law does not afford relief."

See also Silva v. City and County of San Francisco, 87 Cal.App.2d 784, 198 P.2d 78; Eckhoff v. Forest Preserve District, 377 Ill. 208, 36 N.E.2d 245; City of Chicago v. Lederer, 274 Ill. 584, 113 N.E. 883; and Franco-Italian Packing Co. v. United States, 128 F.Supp. 408, 130 Ct.Cl. 736.

It is clear from this line of cases that notice of preliminary proceedings of proposed actions which may result in taking land for public use is not a damaging of a property which would entitle the owner to compensation therefor. The recording of the resolution in the instant case could only give notice of such a possible proceeding and therefore would not be actionable. The fact that the statute does not specifically provide therefor is immaterial.

However, the Weintraubs do not question the authority of the District to pass the resolution, but only complain of its recording of the instrument. Their contention is that the recording of the instrument was not in good faith. They admit that the project officers were acting within the scope of their agency, but that such acts were not in good faith and thereby became unlawful. The real question here is whether the District had a right to make the preliminary plans, and include them in the minutes. Since it did, anyone was entitled to inspect the record of the District; any other rule would require that political subdivisions conduct their activities under strict secrecy. Since publication of preliminary procedure does not constitute the taking or damaging of property in the instant case, then good faith in the recording is not an issue. There can be little question but what a prospective buyer would be entitled to go to the record and find out what was contemplated in regard to flood-control districts.

The two cases upon which the Weintraubs rely—namely, State ex rel. Morrison v. Helm, 86 Ariz. 275, 345 P.2d 202, and Whitestone v. Town of South Tucson, 2 Ariz.App. 494, 410 P.2d 116—are not in point. The question in those cases involved the abandonment of condemnation proceedings after judgment of the court. We hold there was no taking in this case, as a matter of law, and that no cause of action for damages arose by reason of the recording of the instrument.

Decision of the Court of Appeals is vacated; judgment of the Superior Court is affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER, and HAYS, JJ., concur.