457 P.2d 307

**The CITY OF TUCSON, a municipal corporation, Appellant,**

v.

**Michael MELNYKOVICH, Appellee.**

**No. 2 CA–CIV 637.**

Court of Appeals of Arizona.

July 17, 1969.

Rehearing Denied Sept. 5, 1969.
Review Denied Oct. 21, 1969.

146

Enos P. Schaffer, City Attorney, by J. Mercer Johnson, Special Counsel, Tucson, for appellant.

Herbert E. Williams, Tucson, for appellee.

MOLLOY, Chief Judge.

This inverse eminent domain action concerns land which was assertedly "taken" in administrative proceedings for public use in 1949, but which was not entered upon and physically used for public purposes until 1965. A host of interesting questions are raised in the briefs in this appeal from a judge-determined verdict in favor of the landowner, but we find the single question of whether or not the landowner was served with notice of the 1949 proceedings to be dispositive.

A plot of land owned by the appellee, Michael Melnykovich, fronts upon Speedway Boulevard in the City of Tucson. In 1948, while the land was outside of the Tucson city limits, the Pima County Board of Supervisors undertook to widen Speedway Boulevard in front of appellee's land from a total width of 60 feet to 100 feet, under the then road establishment statute, A.C.A. 1939 § 59–601. The widening was to be symmetrical on both sides of Speedway, so that the widened road would extend 20 feet onto appellee's 60 feet (wide) by 135 feet (deep) plot. A resolution and map purportedly accomplishing this widening was recorded in January, 1949, but nothing more was done to effectuate the widening until 1965. As stated in the resolution, no compensation was awarded any affected landowners, on the strength of a determination that benefits exceeded the value of land taken.

In 1957, our Supreme Court rendered Mc-Cune v. City of Phoenix, 83 Ariz. 98, 317 P.2d 537, which, in language that is interpreted in contradictory ways by the parties here, held unconstitutional the provisions of the former statute permitting the fixing of compensation by the board of supervisors for land taken or damaged. *See also* Pima County v. Cappony, 83 Ariz. 348, 321 P.2d 1015 (1958). The dispute over *McCune's* language is as to whether it also nullified the provisions of the former act permitting the taking of private property under the statute. We find no need to resolve this conflict because, as we see it, whether or not there could be a taking of title under the act, a *sine qua non* of any such taking would be observance of the statute's requirement that the board give notice of the public hearing [at which the question of the establishment is considered] " * * * to each such person by service as in a civil action * * *" A.C.A. 1939 § 59–601.

There is in the board of supervisors' file in these proceedings a notarized certificate by W. T. Featherman, described as a "PIMA COUNTY EMPLOYEE," indicating that he served a copy of the notice on "M. Melykovich" [*sic*] at 2:00 on November 5, 1948. The certificate indicates that service was made upon another landowner, W. R. Garrett, at precisely the same time. There is also in the file a list of what purports to be the signatures of persons acknowledging service of the notice, alongside the name and address of the owner and the time and date of service. Beside the name and address of "M. Melykovich" [*sic*] and the above-noted date and time of service on this sheet there is a signature which is somewhat difficult to read and appears as "M. Melynkv****." Apart from the foregoing, there is nothing in the record indicating that appellee received notice of these proceedings or that indicates any participation by him in the proceedings.

At the trial, which was to the court, sitting without a jury, appellee proved his ownership of the land in question since 1947, its physical appropriation by the City

of Tucson in 1965, and the amount of his loss. As its first witness, appellant called appellee for cross-examination. Appellee testified, in part, as follows:

"Q. A hundred feet total, fifty feet on each side, I was mistaken. Let me rephrase the question so you will understand me. I used the wrong description, Mr. Melynkovich [*sic*], however, in 1948 did you have any knowledge at all that the Board of Supervisors of Pima County was establishing the right of way to a width of one hundred feet on East Speedway?

"A. No sir."

Appellee also denied that the signature on the list of acknowledgments was his. If his testimony on this subject was at first somewhat hesitant, when he was confronted with a faint photocopy, it was entirely positive when he was confronted with the original:

"Q. I am now going to show you the original from which this copy was xeroxed and ask you to examine the same line that I'm pointing to here where your name is penciled, and the figure with the address, 5008 East Speedway, and ask if that's your signature that appears there.

"A. No.

"Q. You deny that's your signature?

"A. I sign always Michael, not mine.

"Q. You're telling me that's not your handwriting and not your signature?

"A. That's right, not mine.

"Q. You were living at 5008 East Speedway on November 5, 1948 the date this was prepared, were you not?

"A. I did live there November.

"Q. Of 1948, the 5th day of November, 1948?

"A. Yes, yes, I live there.

"Q. And do you further deny that you were ever served with a notice of road proceedings number 586 on the 5th day of November, 1948?

"A. I cannot understand request.

"Q. Well, you did on the—on the 5th day of November, 1948—you did receive a notice of road proceedings 586?

"A. No.

"Q. You did not?

"A. No.

"Q. If the Court please, in view of the testimony I'm going to have to retain this file here because I will have to bring in other evidence then to substantiate my position on it."

Notwithstanding the last-quoted statement of appellant's counsel, there was no further evidence adduced on the subject of receipt of notice by appellee, or on the subject of the genuineness of his signature. Nor was there any showing of the whereabouts of W. T. Featherman, the indicated process server.

Appellant's position is that there was a valid taking of the land in 1949, when the board of supervisors "established" the wider Speedway and "condemned" and "appropriated" the land within its course. It is argued that, under *McCune* and *Cappony, supra,* the provisions of A.C.A. 1939, § 59–601, relating to the *establishment* of highways were valid and severable from the invalid provisions concerning the fixing of compensation, and we are also invited to hold that the *McCune* decision is to be given only prospective, and not retroactive, effect. Appellant also points to additional evidence that, since 1953, tax statements sent to appellee by the Pima County Treasurers have described appellee's land "less" the 20-foot strip in question, and that, in 1963, appellee executed a mortgage which excepted the same portion, and argues that appellee is barred by estoppel and laches. An argument based upon waiver is also made, as well as a statute of limitations argument based not only upon the two-year inverse proceeding limitation,[1] but also upon statutes of limitations relating to adverse possession of land.[2]

■ Neither party below requested findings of fact or conclusions of law, and none were made. We are thus obliged to assume that the trial judge's findings on every controverted fact are such as to support the judgment. Goode v. Powers, 97 Ariz. 75, 76, 397 P.2d 56, 57 (1964). It is our duty to sustain the judgment of the trial court if there is any reasonable evidence in the record which supports a legal basis for the judgment. Rau v. Rau, 6 Ariz.App. 362, 432 P.2d 910 (1967); Arizona Cotton Ginning Co. v. Nichols, 9 Ariz.App. 493, 454 P.2d 163 (1969).

■ Generally, a landowner is entitled to effective notice of proceedings which result in the taking of his property for a public use. Walker v. City of Hutchinson, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956). *See also* Schroeder v. City of New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255, 89 A.L.R.2d 1398 (1962), and Laz v. Southwestern Land Company, 97 Ariz. 69, 397 P. 2d 52 (1964). A.C.A. 1939, § 59–601, expressly requires that notice be served upon an affected landowner " * * * as in a civil action * * *" It is true, as appellant notes, that public officers are presumed to have done their duty, and it is the established rule in our courts that a return of service of process can be impeached only by clear and convincing evidence. Eldridge v. Jagger, 83 Ariz. 150, 317 P.2d 942 (1957); Occidental Life Insurance Company of Cal. v. Marsh, 5 Ariz.App. 74, 423 P.2d 150 (1967); Tonelson v. Haines, 2 Ariz.App. 127, 406 P.2d 845 (1965). As these authorities indicate, however, the burden to be met is not an impossible one.

We do not think it can be said, as a matter of law, that the testimony given by the appellee on this subject was less than clear, or that it necessarily lacked a convincing quality. Appellee expressly and unequivocally denied receiving notice and signing the acknowledgment. Apart from the

---

1. A.R.S. § 18–158 provides a two-year statute of limitations for property taken or damaged for construction of a public highway. The constitutionality of the statute was upheld in Rutledge v. State, 100 Ariz. 174, 412 P.2d 467 (1966).

2. *See* A.R.S. §§ 12–522, 12–523 and 12–526.

sworn certificate itself and the purported signature, nothing in the evidence has a tendency to refute the testimony. As we pointed out in *Tonelson, supra,* at 2 Ariz. App. 129, 406 P.2d 847, whether or not the testimony was "convincing" is a matter for determination by the trial judge. Under the cited rules of appellate review, we must assume that the matter was determined in appellee's favor.

■ Once it is determined, as we think it must be here, that appellee did not receive notice of the 1948 proceedings culminating in the 1949 resolutions, the rest of appellant's contentions fall. Appellant argues that, even under the *McCune* case, *supra,* the widened Speedway was "established" by the 1949 resolution, and, as we understand the argument in view of the facts and result of *McCune,* that title to the 20-foot strip passed to Pima County at that time. Appellant also argues, relying upon the discussion of the nature of a "taking" of "property" set forth in In re Forsstrom,[3] 44 Ariz. 472, 479 et seq., 38 P.2d 878, 888 et seq. (1934), that the value of the land was damaged and that there was accordingly a "taking" of the land by reason of the passing and recording of the 1949 resolutions, which necessarily placed a cloud on plaintiff's title to the 20-foot strip.

■ There is a short answer to the first argument. Even if the term "established" as used in *McCune* (83 Ariz. at 106, 317 P. 2d 537), refers to the passing of title to the right of way, *this plaintiff* could not be deprived of *his land* without the statutorily prescribed and constitutionally required (Walker v. City of Hutchinson, *supra*) notice. By the logic of a contrary result, the condemnor could commence establishment proceedings, neglect to serve affected landowners and claim their property without any further proceedings after the expiration of two years after establishment. Due process will not tolerate such treatment.

■ As to the second argument, it is a general rule that the planning or plotting of a public improvement does not amount to a taking of the affected property. Weintraub v. Flood Control Dist. of Maricopa County, 104 Ariz. 566, 456 P.2d 936 (1969); Hilltop Properties, Inc. v. State, 233 Cal. App.2d 349, 43 Cal.Rptr. 605, 609–612 (1965), and supporting authorities cited; Annot., 64 A.L.R. 546. Here, the 1949 resolutions in and of themselves did not cause any interference with or invasion of plaintiff's land or curtailment of his use of the land. If plaintiff had any remedy in the courts after the passing and recording of the 1949 resolutions, and prior to 1965 *(see* Weintraub v. Flood Control Dist. of Maricopa County, *supra)*, that would not carry with it a conclusion that there could be a taking or a damaging within the meaning of § 18–158, providing a two-year statute of limitations. In our view, that statute has reference only to a visible taking or damage to the physical land itself, and not to clouds on titles to land. Nothing in *Forsstrom,* which was concerned with a physical change of grade, or Maricopa County Municipal Water C. D. No. 1 v. Warford, 69 Ariz. 1, 206 P.2d 1168 (1949), or Rutledge v. State, *supra,* n. 1, cited by appellant, is to the contrary.

Appellant also argues waiver, estoppel, laches, and adverse possession by the State. All of these related contentions must be considered in the light of the fact that this record shows no entry by appellant or any other public authority onto the land in question prior to 1965.

■ Waiver of ownership in real property is not lightly found, *see* 28 Am. Jur.2d Estoppel and Waiver § 81, and we see nothing whatever in the record to compel this conclusion. Appellant predicates both laches and estoppel contentions on plaintiff's receipt of the post-1953 tax bills and his execution of the 1963 mortgage. There was no showing that appellee pre-

3. Portions of *Forsstrom* were overruled in County of Mohave v. Chamberlin, 78 Ariz.

422, 429–430, 281 P.2d 128, 132–133 (1955).

pared the mortgage, or any explanation as to why the 20-foot strip was excepted from either the tax receipts or the mortgage. One in peaceful possession of all that he claims is not chargeable with laches, *see* 30A C.J.S. Equity § 116(c), at p. 61 et seq., and strict application of the doctrine of laches is required " * * * when the effect is to divest men of their estate and land." Arnold v. Melani, Wash., 449 P.2d 800, 803 (1969). We see no room for its application here. An essential element of estoppel is affirmative action inconsistent with a claim afterwards relied upon. Decker v. Hendricks, 97 Ariz. 36, 40, 396 P.2d 609, 611 (1964). We do not think that mere receipt of the tax bills excepting the strip and failure to make inquiry on the subject in that connection meets the test. As to the mortgage, plaintiff was not bound to mortgage all the land he owned, and there is no evidence of any reliance by appellant on this instrument. There was no evidence at all of adverse possession.

Judgment affirmed.

HATHAWAY and KRUCKER, JJ., concur.