465 P.2d 589

**The STATE of Arizona, ex rel., Justin HER-MAN, Director, Arizona Highway Department, Appellant,**

v.

**LARRIVA'S ACE ELECTRIC CO., an Arizona corporation, Appellee.**

**No. 2 CA–CIV 725.**

Court of Appeals of Arizona, Division 2.

Feb. 26, 1970.

As Amended on Denial of Rehearing April 9, 1970.

Review Denied May 5, 1970.

Gary K. Nelson, Atty. Gen., by William Kimble, Sp. Asst. Atty. Gen., Phoenix, for appellant.

Karam & Martin, by Robert Martin and Nasib Karam, Nogales, for appellee.

HOWARD, Chief Judge.

In the "before situation" the appellee's property consisted of Lots 1, 3 and 4 of Block 11, City of Nogales, with a total area of 26,112 square feet. As part of the construction of Interstate 19 in Nogales, Arizona, the appellant State of Arizona took 3,790 square feet or almost one-half of Lot 1. In the "before situation" the subject property was a corner lot bounded on the east by Terrace Avenue, a one-way street for northbound traffic, on the north by Crawford Street, a conventional two-

way street, and on the south partially by Mix Street. Lot 1 composed the corner and was improved with an old apartment building.

On May 2, 1967 the Arizona State Highway Commission pursuant to the recommendations of the State Highway Director passed a resolution reciting that the public necessity, safety and convenience required the improvement of the portion of the Tucson-Nogales Highway. The resolution referred to a highway map which map and resolution showed the part of appellee's property that was to be taken. In February of 1968 and before the issuing of the summons and complaint, the appellee began construction of a business building on the property. On April 25, 1968 the summons and complaint were issued.

In order to fully comprehend the facts in this case, a description of the property after the construction of the building is necessary. From north to south the lots of the subject property are arranged as follows: Lot 1, Lot 3 and Lot 4. The building was constructed on Lot 3, the middle lot, and overlapped slightly on Lot 4. Lot 1 in the "before" situation had a frontage of 96 feet on Terrace Avenue. Appellant took the northern one-half of this lot. Since the taking was not at a right angle to the easterly boundary of Lot 1, the frontage left on Terrace Avenue was 58.68 feet.

Appellant appeals only from that part of the judgment which awarded severance damages, its sole contention being that the court erred in denying its motion to strike appellee's testimony as to severance damages.

Appellee's evidence as to severance damages was presented by Pierre Baffert, a real estate appraiser, and by Richard Larriva, an officer of the appellee corporation. Appellant maintains that this testimony was based upon improper considerations and thus should have been stricken by the trial judge.

The appellee, in essence, contends that if these witnesses testified to the fact of severance damages, the reasons that they gave should be ignored. We do not agree with this contention. Both Baffert and Larriva claimed that the reason they attributed severance damages was because of the fact that the land was not being put to its most efficient use since had appellee known exactly where the right-of-way line was going to be, then appellee could have built its building all the way up to the right-of-way line. They testified that constructing the building in such a manner would have prevented the island of land which now exists in the "after" situation between the building and the right-of-way line. They also testified that the west side of Lot 1 is curbed in the "after" situation.

■ We first consider the question of damages due to the appellee failing to construct its building up to the right-of-way line. Larriva testified at the trial that the appellant would not tell him where the final right-of-way line would be. Because of this the architects advised him not to build on Lot 1. We do note that the appellee was not without some guidance as to the location of the right-of-way line since it was served with a copy of the summons and complaint which had attached thereto a map showing the location of the right-of-way line. In fact, in the final construction of the highway, the actual right-of-way line on the ground coincided with that represented on the map. Until such time as the summons and complaint was issued, appellee's freedom of use of its land was in no way infringed upon or restricted by the passing of a mere resolution on the part of the State. State ex rel. Willey v. Griggs, 89 Ariz. 70, 358 P.2d 174 (1960); Weintraub v. Flood Control District of Maricopa Co., 104 Ariz. 566, 456 P.2d 936 (1969); Schock v. Jacka, 105 Ariz. 131, 460 P.2d 185 (1969); City of Tucson v. Melnykovich, 10 Ariz.App. 145, 457 P.2d 307 (1969).

The rationale behind these cases is that the mere passing of a resolution is nothing more than an indication of intent on the part of the condemning authority which they may change at any time in the future

and the land owner should not be subjected to uncertainty and be prevented from using his land in any manner he may wish. The fact that a resolution has been passed does not necessarily mean that the property will ever be condemned. Condemnation may take place ten or fifteen years from the date of the resolution.

The appellee could have placed his building upon any part of his land he so desired prior to the time that the complaint was filed and the summons issued. In fact, he could have placed the improvements on that part of his property that was eventually taken by the State of Arizona, even though he had notice of the resolution, just as long as he didn't do so for the purpose of enhancing his damages. If done in good faith, he would have been compensated for the taking of these improvements. Showalter v. State ex rel. Sullivan, 48 Ariz. 523, 63 P.2d 189 (1936).

As we understand the testimony of appellee's witnesses, it would have made no difference whether the State had taken any land of the defendant or not because their basis for damages was not the fact that there was a taking, but the fact that the building was built by the landowner in such a manner that it did not fully utilize the land because of the anticipated taking.

A.R.S. § 12–1122 provides:

\* \* \* \* \* \*

"2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned *by reason of its severance* from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff." (Emphasis added.)

■ As we view the statute it requires the damage to be caused by the severance of the land or at least by some action taken by the State and not by some action taken by the property owner.

If the testimony in this case had been to the effect that Lot 1 was suitable for parking purposes in the "before" situation, but that, by taking one-half of the lot, such suitability was diminished and therefore damaged the remainder of the land, or if the testimony had been that some sort of improvement could have been constructed on Lot 1, but because of the taking and the manner of the taking no improvements could be made and therefore there was damage to the remainder, such testimony would have been proper. Unfortunately, this was not the testimony of these witnesses.

■ In order to attempt to ascertain if there was not at least one item of compensable damage upon which these witnesses relied as a basis for their testimony as to severance damages, we turn our attention to their statements about the curbing on the west side of Lot 1. The witness for the appellant testified at the trial that curb cuts were available to the landowner upon request. There was no evidence offered by the appellee to refute this testimony. There was thus no showing of impairment of access. See City of Phoenix v. Wade, 5 Ariz.App. 505, 428 P.2d 450 (1967).

■■ The rule is that where a witness testifies as to damages and bases his opinion entirely upon improper considerations, his testimony should be stricken from the record. City of Gilroy v. Filice, 221 Cal. App.2d 259, 34 Cal.Rptr. 368 (1963); Rose v. State, 19 Cal.2d 713, 123 P.2d 505, 521 (1942); Blumenstein v. City of Long Beach, 143 Cal.App.2d 264, 299 P.2d 347, 352 (1956); City of Phoenix v. Wade, supra. The motion to strike should be specific. Blumenstein v. City of Long Beach, supra. We believe that the motion to strike was specific in this case. There were no "saving" matters testified to by these witnesses which would have justified the court in refusing to strike their testimony. See People ex rel. Dept. of Public Works v. Lipari, 213 Cal.App.2d 485, 28 Cal.Rptr. 808 (1963).

We hold that it was reversible error on the part of the trial court not to grant the motion to strike the testimony of Larriva and Baffert as to severance damages.

The judgment as to severance damages is reversed and remanded for a new trial.

KRUCKER, J., and ROBERT E. Mc-GHEE, Judge of Superior Court, concur.

NOTE: Judge HATHAWAY having requested that he be relieved from consideration of this matter, Judge McGHEE was called to sit in his stead and participate in the determination of this decision.