NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, et al., *Plaintiffs/Appellees*,

*v.*

FOOTHILLS RESERVE MASTER OWNERS ASSOCIATION, INC.,
*Defendant/Appellee*.

DIETMAR HANKE, et al., *Intervenors/Appellants*

No. 1 CA-CV 22-0216
FILED 3-7-2023

Appeal from the Superior Court in Maricopa County
No. CV2017-010359
The Honorable Timothy J. Thomason, Judge

**AFFIRMED**

COUNSEL

Dietmar and Linda Hanke, Phoenix
*Intervenors/Appellants*

Arizona Attorney General's Office, Phoenix
By Michelle Burton, Joe Acosta, Jr.
*Counsel for Plaintiffs/Appellees*

Zeitlin & Zeitlin, P.C., Phoenix
By Dale S. Zeitlin, Casandra C. Markoff
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Cynthia J. Bailey and Vice Chief Judge David B. Gass joined.

---

**T H U M M A**, Judge:

**¶1**         Appellants Dietmar and Linda Hanke appeal from the grant of the State of Arizona's motion for summary judgment on their claim for severance damages involving the State's condemnation of neighboring land. Because the Hankes have shown no error, the judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY

**¶2**         In 2017, the Arizona Department of Transportation (ADOT) filed this action to condemn land to extend the 202 freeway. ADOT sought to condemn land owned by the Foothills Reserve Master Owners' Association, Inc. (HOA). Under the HOA's Covenants, Conditions, and Restrictions (CC&Rs), the HOA board represented HOA members in condemnation proceedings. The Hankes, who are HOA members and own one of the nearly 600 units in the Foothills Reserve, later intervened as defendants. The Hankes argued that the condemnation was not for a public need or use and was improper, and that the HOA could not represent their interests.

**¶3**         By mid-2018, the HOA stipulated that the State could obtain immediate possession of the land being taken and that the taking was necessary and for a proper public use. The Hankes were not a party to this stipulation. Over the Hankes' objection, the court entered the stipulated order for immediate possession in July 2018.

**¶4**         In 2019, the superior court determined that the CC&Rs authorized the HOA to represent all homeowners for their damages claims in the condemnation. When the Hankes objected, the court allowed the Hankes to represent themselves, meaning the HOA no longer represented their interests.

**¶5**         Although stating severance damages totaled $204,000, the Hankes sought "substitute facilities" damages totaling nearly $1.5 million and punitive damages. On motion, the court ruled that "substitute facilities" damages were not recoverable and that, at most, the Hankes were

entitled to severance damages, representing "the difference between the market value of the remainder before and after the taking." *See State ex rel. Ordway v. Buchanan*, 154 Ariz. 159, 164 (1987). Given statutory immunity, *see* A.R.S. § 12-820.04 (2023),[1] the court also rejected the Hankes' punitive damage claims.

¶6        The State and the HOA, on behalf of all unit owners other than the Hankes, reached a settlement that the court approved over the Hankes' objection. The State moved for summary judgment against the Hankes, seeking a determination they were owed $5,000 in severance damages and arguing the Hankes failed to dispute the $5,000 amount with admissible controverting evidence. The Hankes opposed the motion, arguing existing eminent domain law was unjust. The Hankes stated that the proper valuation date was in 2005, when ADOT made the "unofficial announcement" of the project, resulting in a claim for $204,000 in severance damages. In doing so, the Hankes stated the $204,000 severance claim was "insufficient to make" them whole. The Hankes' damages opinion largely focused on their "substitute facilities" claim for nearly $1.5 million that the court previously rejected.

¶7        The State's reply argued the Hankes did not dispute genuine issues of material fact sufficient to defeat the motion for summary judgment. The State argued the Hankes admitted in their response that they will not "comply with Arizona law regarding the computation of damages," that their damages claim did not comply with Arizona law regarding severance damages and that, instead, they disagreed with eminent domain law. Accordingly, the State repeated its request that the court grant summary judgment requiring it to pay the Hankes $5,000 in severance damages plus interest.

¶8        The court granted summary judgment for the State and against the Hankes, with the resulting partial final judgment directing the State to pay the Hankes $5,000 plus interest. The State timely paid that amount and the Hankes timely appealed. This court has jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

---

[1] Absent material revisions after the relevant dates, statutes cited refer to the current version unless otherwise indicated.

¶9        The Hankes argue three general issues on appeal: (1) the State's taking of the land for the freeway was improper; (2) the State and the HOA could not properly stipulate to the taking; and (3) the superior court erred in granting the State's motion for summary judgment. The court addresses these issues in turn.

## I.        The Hankes Have Not Shown the State's Taking of the Land for the Freeway Was Improper.

¶10        The State has the power of eminent domain to take private property for a necessary public use upon paying just compensation. *See, e.g.,* Ariz. Const. art. 2, § 17; A.R.S. §§ 12-1112; 12-1131; *Bailey v. Myers*, 206 Ariz. 224, 228 ¶ 14 n.1 (App. 2003). Whether a taking is for a public use is "a judicial question." Ariz. Const. art. 2, § 17; A.R.S. § 12-1132(A). The issue of necessity, by contrast, is deferential, giving "great weight" to assertions of necessity. *Bailey*, 206 Ariz. at 228 ¶ 14 n.1. To defeat a necessity claim, the party opposing the taking must show by clear and convincing evidence it is "unnecessarily injurious." *See Queen Creek Summit, LLC v. Davis*, 219 Ariz. 576, 580 ¶ 16  (App. 2008) (citation omitted).

### A.        Public Use.

¶11        Public use includes "[t]he possession, occupation, and enjoyment of the land by the general public, or by public agencies." A.R.S. § 12-1136(5)(a)(i). Although agreeing "the freeway is a public use," the Hankes argue the freeway was built for the purpose of "general economic health," which is expressly excluded from the statutory definition of "public use." *See* A.R.S. § 12-1136(5)(b). Contrary to that assertion, freeways have long been understood to serve a public use under eminent domain law. *See, e.g.,* *Calmat of Ariz. v. State ex rel. Miller*, 176 Ariz. 190, 191 (1993); *State ex rel. Herman v. Schaffer*, 105 Ariz. 478, 479 (1970); *State ex rel. Morrison v. Thelberg*, 87 Ariz. 318, 324 (1960). The Hankes have cited no authority for the proposition that a public freeway is not a public use and have not shown the superior court erred in considering the public use issue.

### B.        Public Need and Necessity.

¶12        The Hankes argue there was "no public need" for the freeway. The State may exercise eminent domain for roads so long as it benefits the county, city or inhabitants and is authorized by statute. A.R.S. § 12-1111. The Legislature has delegated to ADOT the power to acquire real property by condemnation that it "considers necessary for transportation purposes." A.R.S. § 28-7092(A). Land for "transportation purposes" includes land needed to build highways. *See* A.R.S. § 28-7092(B). The

Hankes have not shown how the taking here failed to comply with these requirements or was undertaken for any improper purpose.

¶13        The Hankes argue other land could have been taken to build the freeway instead of the HOA common area. Although perhaps true, the Hankes cite no authority for the proposition that the availability of alternatives defeats the taking of specific land. Moreover, the availability of alternative land does not mean the taking was unnecessary. *See, e.g., Chambers v. State ex rel. Morrison*, 82 Ariz. 278, 280–83 (1957) (rejecting argument that the taking was not necessary because the State could have condemned other land). The Hankes have failed to show there was not a public need for the taking or that it was not necessary.

## II.    The State and the HOA Properly Could Settle Their Dispute.

¶14        The Hankes argue the HOA was not the proper party to represent the homeowners, and, as a result, the settlement between the State and the HOA was improper because it did not properly include the Hankes. The Hankes also argue the superior court "force[d]" the settlement between the State and the HOA on the Hankes and that they should have been able to object to the settlement.

### A.    The HOA Properly Could Represent the Homeowners.

¶15        The HOA's CC&Rs expressly provide the unit owners appoint the Board [of the HOA] to represent the owners "in connection with the taking" of any common area, adding that "[t]he Board shall act in its sole discretion" in that representation. The CC&Rs designate the HOA to represent unit owners in a condemnation action. *See also Catalina Foothills Unified Sch. Dist. v. La Paloma Prop. Owners Ass'n, Inc.*, 238 Ariz. 510, 517–18 ¶ 28–30 (App. 2015) (holding the HOA may represent the homeowners in a condemnation action of a subdivision's common areas when authorized by the CC&Rs). The court correctly determined the HOA was the proper party to represent the homeowners.

### B.    The State and the HOA Could Settle Their Disputes Without Participation or Approval by the Hankes.

¶16        The Hankes were allowed to intervene as parties to represent their separate interests. The Hankes then moved to sever their case before the State and the HOA reached a settlement, asserting they "are pursuing an entirely different remedy than the HOA." The superior court granted the Hankes' motion to sever. Additionally, the court made clear the HOA was not representing the Hankes, the Hankes were not bound by any settlement

or resolution of the dispute between the State and the HOA and, similarly, could not object to any such settlement or resolution. The Hankes, however, seek to challenge the settlement between the HOA and the State.

¶17 The Hankes were not bound by, or parties to, the settlement agreement between the State and the HOA. Accordingly, the Hankes have not shown how they have standing to object to or appeal from that settlement agreement. *Dowling v. Stapley*, 221 Ariz. 251, 273-74 ¶¶ 72-76 (App. 2009). The superior court made clear the Hankes were representing themselves in their claim for damages from the State. Because they were not parties to the settlement agreement, the court could not "force" a settlement on the Hankes. For these reasons, the State and the HOA could settle their disputes without participation by the Hankes.

### III. Summary Judgment was Proper Because the Hankes Did Not Show a Genuine Dispute of Material Fact.

¶18 The Hankes argue summary judgment was improper because the superior court erred in limiting their recovery to severance damages, not using 2005 for the "before" date for severance damages, and not allowing them to recover substitute facilities and punitive damages.

¶19 "The court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). When the movant shows that no genuine issue of material fact exists, the opposing party has the burden to produce sufficient competent evidence to show such an issue exists. *E.g.*, *Kelly v. NationsBanc Mortg. Corp.*, 199 Ariz. 284, 287 ¶ 14 (App. 2000). "If the opposing party does not so respond, summary judgment, if appropriate, shall be entered against that party." Ariz. R. Civ. P. 56(e). This court reviews de novo a grant of summary judgment. *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003).

¶20 Here, the State condemned a common area of land owned by the HOA. The Hankes, however, had a claim for severance damages for any diminution of value of their unit. *See State ex rel. Ordway v. Buchanan*. 154 Ariz. 159, 164 (1987) ("Severance damages are proper when the land condemned is part of a larger parcel."); *accord* A.R.S. § 12–1122(A). Severance damages are measured by "comparing the worth of the remaining property before and after the taking." *City of Phoenix v. Wilson*, 200 Ariz. 2, 9 ¶ 18 (2001). Applying this law, the superior court properly concluded the Hankes both were entitled to severance damages and had the burden to prove their severance damages. *Buchanan*, 154 Ariz. at 164.

¶21 Although typically the date of the summons is used to determine severance damages, at times, the date may be the order of immediate possession, particularly when the value of the property has increased. *See City of Scottsdale v. CGP-Aberdeen, L.L.C.*, 217 Ariz. 626, 634 ¶ 36 (App. 2008). Here, the order for immediate possession was issued in July 2018. The State's expert used July 2018 to determine the "before" and "after" market value to calculate severance damages to the Hanke's unit. Looking at the difference between those values, the State's expert opined that the Hankes incurred $5,000 in severance damages. The State relied on this value in seeking summary judgment. In opposing the State's motion, the Hankes did not dispute, as a factual matter, the $5,000 in damages. Instead, the Hankes claimed far higher damages based on different legal concepts.

¶22 First, the Hankes used November 2005 as the "before" date, claiming ADOT first informally announced the freeway project then. Although conceding the State did "nothing" on the project for at least a decade after November 2005, the Hankes claim their unit decreased in value "well over $100k" during that decade. But planning is not a taking for purposes of determining severance damages. *City of Scottsdale*, 217 Ariz. at 634 ¶ 34; *see also Weintraub v. Flood Control Dist. of Maricopa Cnty.*, 104 Ariz. 566, 571 (1969) ("[N]otice of preliminary proceedings of proposed actions which may result in taking land for public use is not a damaging of a property which would entitle the owner to compensation therefor."); *State ex rel. Herman v. Larriva's Ace Elec. Co.*, 11 Ariz. App. 452, 454 (1970) ("The fact that a resolution has been passed does not necessarily mean that the property will ever be condemned."). Accordingly, the Hankes have not shown the court erred in using the July 2018 order of immediate possession as the proper date for severance damages.

¶23 Second, the Hankes used "the current date" as the "after" date when they calculated damages in 2020, adding "Proximity Damages are likely to continue to accrue." But the "before" and "after" dates used to determine severance damages refer to the value of Hankes' unit before and after the July 2018 immediate possession order, seeking to place them in the position they "would have occupied had no taking occurred." *See State ex rel. Miller v. Filler*, 168 Ariz. 147, 149, 150 (1991). As a result, the Hankes failed to disclose or show the court facts to dispute the severance damages calculation, looking at the "before" and "after" condition when the State took possession of the property in July 2018. Thus, the Hankes failed to show a genuine dispute as to any material fact as to severance damages.

**¶24** The Hankes argue they should have been able to recover "general, special, indirect, consequential, incidental, and hedonic damages" as well as punitive and substitute facilities damages, as they argued in opposing the State's motion for summary judgment. The superior court properly concluded the Hankes cannot recover punitive damages from the State. *See* A.R.S. §§ 12-820.04 (establishing immunity for public entity and public employee acting with the scope of employment) & 28-7092(A) (authorizing ADOT to use condemnation to acquire real property "necessary for transportation purposes"). Other than severance damages, the Hankes have not shown a legal right to these other types of damages claimed, and the superior court properly concluded the Hankes failed to do so. *See Maricopa Cnty. v. Shell Oil Co.*, 84 Ariz. 325, 327 (1958) (explaining the property owner bears the burden to establish recoverable damages).

**¶25** Finally, the Hankes have shown no entitlement to compensation for the State to pay them the costs of buying a different unit or house, what they call replacement cost or substitute facilities damages. They cite no authority on appeal supporting such a claim and no Arizona opinion has recognized the concept as a requirement for eminent domain. To the extent the Hankes rely on dicta in *Brown v. United States*, 263 U.S. 78 (1923), the United States Supreme Court later made clear that the concept is not constitutionally required. *See United States v. 50 Acres of Land*, 469 U.S. 24, 33 (1984); *see also id.* at 35 (noting the concept "diverges from the principle that just compensation must be measured by an objective standard that disregards subjective values which are only of significance to an individual owner."). Nor have the Hankes shown that Arizona law fails to provide constitutionally required just compensation here. *See Catalina Foothills Unified Sch. Dist.*, 238 Ariz. at 516 ¶ 21. For these reasons, the Hankes have shown no error in the superior court granting the State's motion for summary judgment and awarding them $5,000 in severance damages.

## IV. The Hanke's Failure to Serve the HOA as Required by This Court's Orders and Rules Entitles the HOA to Sanctions.

**¶26** The Hankes served their notice of appeal on both the State and the HOA, and the Hankes' briefs on appeal criticize actions by both the State and the HOA. The Hankes, however, failed to serve the HOA with their opening brief on appeal when they filed it. *But see* ARCAP 4(f) (requiring such service). This court then ordered the Hankes to serve the HOA by September 6, 2022, and to file a certificate of service. *See* ARCAP 4(f) & (g). That order added the court "will consider imposing sanctions if appellants fail to serve Foothills [with] any additional documents filed in

this appeal." The Hankes failed to serve their opening brief on the HOA by September 6, 2022. The HOA now seeks attorneys' fees as a sanction, citing A.R.S. § 12-349.

¶27 Reasonable attorneys' fees and expenses may be assessed against a party who unreasonably expands or delays the proceeding. A.R.S. § 12-349(A)(3). The Hankes claim they did not serve their opening brief on the HOA as ordered by the court because they were "[l]acking support staff and having suffered several cyberattacks." However, the Hankes filed numerous motions between the time the court first ordered them to serve the HOA with the opening brief and when the Hankes finally did so. This conduct belies the claim that they were not able to serve the HOA. Because the Hankes unreasonably expanded and delayed the proceedings, the HOA is awarded its reasonable attorneys' fees incurred on appeal that were caused by that sanctionable conduct.

## CONCLUSION

¶28 The judgment is affirmed. Along with the award of sanctions for the HOA under A.R.S. § 12-349, the arguments asserted by the Hankes against the HOA arise out of contract. Accordingly, as the successful party on appeal, the HOA is awarded its reasonable attorneys' fees and costs incurred on appeal under A.R.S. §§ 12-341 and 341.01, contingent upon its compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:     AA